## FLOWERREE CATTLE COMPANY, RESPONDENT, *v.* LEWIS AND CLARK COUNTY ET AL., APPELLANTS.

(No. 2,126.)

(Submitted June 17, 1905.   Decided July 14, 1905.)

*Taxation — Livestock — Situs—Statutes—Amendment—Repeal.*

Corporations—Livestock—Where Assessable.
   1. *Held,* that where a corporation, engaged in the livestock business, grazed its cattle in T. county in which county the corporate headquarters were maintained, where its real estate was situate, and where its business manager and foreman resided, caused a large number of its livestock to be driven into L. & C. county to be winter-fed, with the intention of having it returned to the former county in the following spring, the *situs* of such livestock for the purposes of taxation —its home—was in the former county, and not in the latter—its temporary abode.

Livestock—Assessment—Statutes—Amendment—Repeal.
   2. Under the provisions of section 5163, Political Code, section 3720 of the same Code, relating to the assessment of livestock, was not repealed by section 3943 as amended (Laws 1903, p. 225), the former section being part of Chapter III, Title X, treating of assessment of property generally, and the latter, part of Chapter IX, of the same Title, having to do with the collection of taxes on certain personal property.

*Appeal from District Court, Lewis and Clark County; Henry C. Smith, Judge.*

ACTION by the Flowerree Cattle Company, a corporation, against the county of Lewis and Clark and others. From a judgment for plaintiff, defendants appeal. Affirmed.

*Mr. Albert J. Galen,* Attorney-General, and *Mr. F. W. Mettler,* for Appellants.

Under a statute of Colorado, very similar to ours, the supreme court of Colorado held that stock ranging in a county on the 1st of May is legally assessable in that county, and the fact that the owner sees fit to make return of· such stock to the assessor of the county in which he lives and to which the stock is each year driven back to the "home ranch," affords him no ground for relief from the taxation in the first-mentioned county.   (*Metcalf* v. *Fisher,* 2 Colo. App. 375, 31 Pac. 175; *Price* v. *Kramer,* 4 Colo. 547; *County Com.* v. *Wilson,* 15 Colo. 90, 24 Pac. 563.)

Section 3943 as amended certainly authorizes the assessment of the property in question in Lewis and Clark county. If section 3720 is in conflict with the Act of 1903, to that extent it is repealed by the repealing clause of said Act.   That the legislature had the right to make such a law seems beyond question, for it is elementary that the state may, at its option, impose taxes on tangible personal property within its limits irrespective of the residence or allegiance of the owner.   (1 Cooley on Taxation, 3d ed., p. 87.)

"For the purpose of taxation, as has been repeatedly affirmed by this court, personal property may be separated from its owner, and he may be taxed on its account, at the place where it is, although not the place of his domicile, and even if he is not a citizen or a resident of the state which imposes the tax." (*Pullman Pal. Car Co.* v. *Pennsylvania,* 141 U. S. 18, 11 Sup. Ct. 876, 35 L. Ed. 613.)

*Mr. Wm. Wallace, Jr.,* and *Mr. Charles Donnelly,* for Respondent.

The following cases sustain respondent's contention that the livestock was properly assessable in Teton county: *Smith* v. *Mason,* 48 Kan. 586, 30 Pac. 170; *Ford* v. *McGregor,* 20 Nev. 446, 23 Pac. 563; *Barnes* v. *Woodbury,* 17 Nev. 383, 30 Pac. 1068; *State* v. *Falconberg,* 15 N. J. L. 323; *State* v. *Haight,* 30 N. J. L. 429; *People* v. *Caldwell,* 42 Ill. 434, 32 N. E. 691; *New Limerick*

*v. Watson*, 98 Me. 379, 57 Atl. 79; *Standard Cattle Co. v. Baird*, 8 Wyo. 144, 56 Pac. 598, 599; *Mitchell v. Lake Twp.*, 126 Mich. 367, 85 N. W. 865-868.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

The Flowerree Cattle Company is a domestic corporation engaged in the livestock business in Teton county, where it maintains its headquarters, where its real estate is situate, and where its business manager and foreman reside. It keeps large numbers of range cattle, which graze in Teton county and also in Choteau county. In the fall of 1903 this company brought into Lewis and Clark county, as was its custom, about two thousand seven hundred head of weak stock, consisting of cows, calves, and bulls, and seventy-seven head of saddle horses, to be winter-fed upon a ranch under contract with the ranch owner, but with the intention on the part of the corporation of returning such stock to its proper range in Teton county as soon as the following spring opened, and the necessity for feeding no longer existed. Approximately two hundred and fifty head of cattle died prior to March 1, 1904. On that date the assessor of Lewis and Clark county assessed the company two thousand six hundred and ninety head of cattle and seventy-seven head of horses for the lump sum of $38,770. The assessor, in making his assessment, did not place separate valuations on the different kinds of property. None of the stock was running at large in Lewis and Clark county. The assessment was made against the will of the company, which contended that it did not have any property subject to taxation in Lewis and Clark county. All of this property was subsequently returned to and listed for assessment and assessed in Teton county for the year 1904. However, upon the demand of the treasurer of Lewis and Clark county, and to prevent seizure and sale of its property, the company paid the taxes upon the property upon the assessment made by the assessor of Lewis and Clark county, under protest, however, and brought this action to recover back the amount so paid, with interest. The complaint sets forth these

facts much more in detail, and further alleges that the company appeared before the board of equalization and sought relief, which was denied. ·To this complaint the defendants interposed a general demurrer, which was overruled; and, upon their refusing to plead further, judgment was entered in favor of the plaintiff, according to the prayer of its complaint, and from this judgment these defendants appealed.

The only question presented for consideration is: ·Was the property in question subject to taxation in Lewis and Clark county for the year 1904, under the facts as disclosed by this complaint?

Sections 3697 and 3700, Political Code, provide generally for the assessment of property. Section 3711 provides for the assessment of the property of a corporation, and provides that it shall be assessed in the county where such property is situate. These provisions are general in their character, and apply equally to all kinds of property. The legislature then made specific provisions for the assessment of particular property under certain conditions. For instance, section 3714 provides that the personal property belonging to the business of a merchant or manufacturer must be listed in the county, town or district where the business is carried on. Section 3715 provides that the personal property of an express, transportation, or stage company, steamboats, vessels, or other water craft, must be listed and assessed in the county, town, or district where such property is usually kept. Section 3716 provides that the personal property and franchises of gas and water companies must be assessed in·the county where the principal works are located. And finally section 3720 provides that livestock belonging to a permanent resident of this state must not be listed or assessed while such stock is in transit, nor until it arrives in the county where the person owning the same resides, and must be listed and assessed in such county. If the stock runs at large in another county than the one in which the.owner resides, it must be assessed in such other county.

While in some instances the meaning of the lawmakers may be somewhat obscure, we are of the opinion that what was intended was this: That all property shall be assessed in the county which is its home. If the property be real estate, its actual *situs* determines the question of its home. If personal property belonging to a merchant, the county where the merchant's business is conducted determines the home of such property; and likewise, if the property be range stock, its home is its accustomed range—in this case, Teton county. Any other construction would lead to the greatest possible confusion and open the door to tax dodging; for it was never intended that the county within which the particular personal property may chance to be casually or in a transitory sense on the first Monday of March shall be the county entitled to assess and collect the taxes upon it. If so, a resident of Jefferson county who happened to drive into Helena on the first Monday of March would be subject to have his team assessed in Lewis and Clark county, even though he returned to his home the same day, and was not within Lewis and Clark county again during the entire year. Likewise, if that theory should be adopted, unscrupulous taxpayers of a county heavily in debt and having a high tax levy might simply transfer their movable property across the county line into a county having a lower levy, and have it assessed there, effecting a saving for themselves, but at the same time depriving their home county of needed revenue; and it is no stretch of imagination to see that the county having the lowest levy would possibly soon become the county having the largest assessment, while other localities, because of large debts and necessarily large levies, would soon become bankrupt.

An imaginary case was presented upon oral argument of what would amount to an escape from taxation, if, for instance, the property involved in this case should in fact not have been returned to its home in Teton county. But there is no possibility of this, if the several county assessors perform their duties, as doubtless they do; for under section 3701 it was the duty of the assessor of Lewis and Clark county to require from the agent

of this company a verified list of the company's property in Lewis and Clark county on the first Monday of March, 1904, which list, among other things, must have shown the particular property belonging to the company, and the county in which it was situated or in which it was liable to taxation; and upon receipt of such statement showing that this particular property was to be returned to and was taxable in Teton county, it would then have become the duty of the assessor of Lewis and Clark county, under the provisions of section 3708, to have reported such fact to the assessor of Teton county.

We are firmly of the opinion that the idea running through our assessment laws is that property shall be assessed in its home county, for to that county it owes the duty of helping to bear the burden of county government. And this was evidently contemplated by the legislature, for it made provision in the sections above referred to, as in others, for determining the actual home of the particular species of property.

We are further re-enforced in our views by the decisions of other courts. In *Pierce* v. *Eddy,* 152 Mass. 594, 26 N. E. 99, in reaching this same result, the supreme court of Massachusetts said: "A horse is kept where he is habitually housed, fed and watered; where he lives and has his home, provided there is any such place. The fact of using him more or less across the boundary line of the town does not alter the fact that the place where he is kept is the barn where he lives."

In *People* v. *Niles,* 35 Cal. 282, it is said: "By thus assigning to personal property a *situs* for the purposes of taxation, we do not consider, however, that it was intended to authorize the listing or taxing out of the owner's county of such personal property as might casually, in the usual and ordinary course of the owner's business, be found in such county on the first Monday in March, or be subsequently in like manner brought into it between that day and the first Monday in August. If A. resides at Placerville, in El Dorado county, and is engaged in teaming between that place and Folsom, in the county of Sacramento, and in the course of his business chances to be with his

team at Folsom, discharging or taking freight, on the first Monday in March, or any subsequent day between that day and the first Monday in August, the *situs* of his team is not, in the sense of the statute, in Sacramento county, but in El Dorado county. If A., residing in Yolo county, drives his carriage into Sacramento county, or has it driven there by his coachman, on the first Monday in March, or any subsequent day between that day and the first Monday in August, it does not thereby become the duty of the assessor of Sacramento county to list and assess it as personal property 'in his county.' It is in his county, it is true, but it is not so in the sense of the statute. Its *situs*, for the purposes of taxation, is in Yolo county."

In *State* v. *Haight*, 30 N. J. L. 428, the court had under consideration a case in which a New Jersey assessor sought to assess boats engaged in ferrying between the New Jersey and New York coasts. The boats belonged to a New York corporation, and after a review of the revenue laws of New Jersey, and a consideration of the subject at some length, the court said: "The establishment of the principle contended for by the assessor in this case would seem to authorize him in assessing everything that he can find within his official limits at any time while making his assessments, which would render it unsafe for a stranger to our soil to visit it with his property during that time. The law does not contemplate any such thing. It is only intended to tax such personal property of foreigners as is actually located or used within the state with something like permanency, and not having its actual location or home somewhere else. These boats have no actual location or place of residence, so to speak, in this state; but they have a location and home in the state of New York, and cannot, I think, in any sense be considered as belonging here, as the objects of taxation by us." (See, also, *Barnes* v. *Woodbury*, 17 Nev. 383, 30 Pac. 1068; *State* v. *Falkinburge*, 15 N. J. L. 320; *Hays* v. *Pacific Mail Steamship Co.*, 17 How. (U. S.) 597, 15 L. Ed. 254; *St. Louis* v. *The Ferry Co.*, 11 Wall. 423, 20 L. Ed. 192.)

While these cases are not directly in point with respect to the

question here to be decided, they do illustrate our views, and tend to fortify us in our position that the dominant idea in our assessment laws is that property shall be assessed in the county which is its home.

Some contention is made that by an amendment made by the Eighth Legislative Assembly to section 3943 of the Political Code (Session Laws, 1903, p. 225), section 3720 is repealed. But section 3720 is a part of Chapter III, Title X, Political Code, while section 3943, as amended, is a part of Chapter IX of the same Title and Code; and assuming, but not deciding or expressing any opinion or suggesting any doubt, that section 3943 as amended is constitutional, still, under the rule of construction provided by the Code itself, the amendment to section 3943 did not have any effect upon the provisions of section 3720.   Chapter III above has to do with the assessment of property generally, while Chapter IX has to do with the collection of taxes on *certain personal property.*   Section 5163 of the Political Code provides as follows: "If the provisions of any chapter conflict with or contravene the provisions of another chapter of the same title, the provisions of each chapter must prevail as to all matters and questions arising out of the subject matter of such chapter."   Applying this rule to the sections under consideration, and section 3720 remains in full force and effect, notwithstanding the amendment to section 3943 above.

We are satisfied that the record sufficiently shows that the home of the property in controversy at the time of its assessment in Lewis and Clark county was not in that county, but in Teton county, and that it was properly assessed and the taxes paid in that county.  No error appearing, the judgment is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE MILBURN concur.