COBURN CATTLE CO., RESPONDENT, *v.* SMALL, COUNTY
TREASURER, ET AL., APPELLANTS.

(No. 2,381.)

(Submitted February 15, 1907.   Decided February 25, 1907.)

(88 Pac. 953.)

*Taxation—Illegal Assessment—Action to Recover Taxes—Trial
—Special Verdict—Sufficiency.*

Trial—Special Verdicts—Essentials.
    1.  A special verdict must find all the facts which are necessary to
enable the court to determine, by a consideration of the pleadings
and the verdict alone, which party is by law entitled to a judgment,
without reference to the evidence.

Taxation—Illegal Assessment—Issues—Special Verdict—Sufficiency.
    2.  Plaintiff cattle company brought suit against a county and its
treasurer to recover taxes alleged to have been illegally collected
from, and paid under protest by, it on thirteen hundred head of
range cattle.  Among other issues presented were, whether the above
number of cattle had been running at large in the county on the
first Monday in March of the year when the assessment was made,
and whether such cattle had been assessed for taxation in the same
year in a neighboring county.  The jury returned a special verdict
finding that the accustomed range of the cattle was in the defend-
ant and the neighboring county, but failing to find upon the issues
above set forth.  *Held*, that the special verdict was insufficient to war-
rant a judgment for plaintiff.

*Appeal from District Court, Valley County; John W. Tattan,
Judge.*

ACTION by the Coburn Cattle Company against S. C. Small
as county treasurer of Valley county and said county to re-
cover taxes paid on certain cattle.  From a judgment for plain-
tiff, defendants appeal.  Reversed and remanded.

*Mr. J. J. Kerr,* and *Mr. C. B. Nolan,* for Appellants.

*Mr. Fletcher Maddox,* for Respondent.

MR. JUSTICE SMITH delivered the opinion of the court.

This is an appeal from a judgment rendered by the district court of Valley county in favor of the plaintiff and against the defendants for the sum of $812.39.

The plaintiff alleged in its complaint that it was a corporation engaged in the business of raising cattle and was in the occupancy of grazing lands in the county of Chouteau; that in the year 1903, it was the owner of a herd of cattle, and during that year the cattle owned by it had been maintained, herded, and grazed in the vicinity of its ranches within the limits and boundaries of Chouteau county; that it did not own, use, or occupy any ranch property or grazing land in Valley county, and did not, during the year 1903, herd, keep, or graze any of its cattle within the limits or boundaries of Valley county; that its officers and agents were familiar with the boundary line of the two counties named, and at divers times during the year 1903 it sent its employees into Valley county for the purpose of driving back any of its cattle that might have drifted into Valley county, or which might have entered said county from any point or direction; that during the months of May, August and November, 1903, it caused its employees to ride the ranges in Valley county, adjacent to the boundary line between Chouteau and Valley counties, and at all points on the ranges in Valley county to which its cattle might have strayed, for the purpose of gathering said cattle and returning them to their accustomed ranges in Chouteau county, and that at the times named some of its cattle were found on the adjacent ranges in Valley county, and the cattle thus found were returned to Chouteau county; that at none of the times named was any greater number than sixty head gathered and returned, and that the aggregate number thus found and returned during the entire year did not exceed one hundred and eighty head, and that there were not at any one time in Valley county during the year 1903 more than sixty head of its cattle, and that on the first Monday in March of that year no cattle belonging to it were in Valley county; that such cattle as were in Valley county during the

year 1903 were there without the knowledge or design of the respondent, and were there casually, accidentally, and temporarily, having strayed there in storms or while grazing, or through causes unknown to it, and at no time during said year were the cattle running at large in Valley county.

It was further alleged that the respondent in the year named did not give in, or furnish to, the assessor of Valley county any list or statement under oath, or otherwise, of cattle possessed or controlled by it in said county on the first Monday of March, 1903, nor was such statement required by the assessor, but that the assessor wrongfully and unlawfully assumed to assess as its property and as subject to taxation in Valley county three hundred head of stock cattle, at the valuation of $6,600; and that the board of equalization of Valley county thereafter wrongfully and unlawfully raised the number to thirteen hundred head, at the assessed valuation of $28,600, and that the assessor caused to be entered in the assessor's book of Valley county for the year 1903 the number of cattle last named, at the valuation fixed, and the assessment-book with that entry was delivered to the county clerk; that the county clerk compiled and entered in the assessment-book the sum to be paid by respondent as a tax and delivered the assessment-book to the county treasurer, S. C. Small; that the sum entered as a tax was $706.42, which sum was thereafter collected from it under protest. It was also alleged that the cattle so assessed in Valley county were assessed in Chouteau county, and that taxes on account of such assessment were paid by it in Chouteau county for the year 1903; that, on account of the payment of the sum named to the treasurer of Valley county, the said county and its treasurer were indebted to it in the sum of $706.42, and for this sum, with interest thereon, a judgment was asked.

The appellants in their answer denied that the respondent's cattle were kept, maintained, herded, or grazed in the vicinity of its ranches or within the limits and boundaries of Chouteau county, and denied that its cattle were not kept, herded, and grazed in Valley county. They likewise denied that the re-

spondent caused its employees to gather its cattle and return them to Chouteau county, or that the total number gathered was as stated by it, or that it did not have cattle in Valley county on the first Monday of March, 1903. They also denied that the cattle in Valley county belonging to the respondent were there temporarily, or because they strayed there during storms, and denied that the cattle belonging to the respondent in Valley county were not running at large there. The answer admitted the assessment by the county assessor and the increased assessment by the direction of the county board of equalization, but denied that these assessments were wrongful or unlawful. There was also an admission that the taxes were collected under protest, and a denial that the cattle assessed in Valley county were assessed in Chouteau county for the year 1903, or that any taxes for that year were paid to Chouteau county on the cattle assessed. There was an affirmative allegation in the answer that during the year 1903 up to and prior to the first day of June of that year there were thirteen hundred head of stock cattle belonging to the respondent, kept, herded, grazed, and ranged by it in Valley county, and that the value and worth of said cattle was the sum of $28,600. The respondent filed a replication denying this affirmative matter.

The cause was tried to a jury, and fourteen interrogatories were submitted to it to be answered, nine of which were answered. There was no general verdict submitted or returned. The interrogatories submitted covered all of the issues involved. Some of the interrogatories answered, and those which were not answered, are as follows:

"(2) In what county was the accustomed range of the plaintiff's cattle in the year 1903? Ans. Chouteau and Valley."

"(7) In the year 1903, did a portion of plaintiff's cattle range in Valley county with its knowledge and through the ordinary methods observed by it in the handling of its cattle? Ans. We cannot agree.

"(8) On the first Monday in March, 1903, were there in Valley county thirteen hundred head of stock cattle belonging to

plaintiff running at large in said county? Ans. We cannot agree.

"(9) If you say there were thirteen hundred head of stock cattle running at large in Valley county at the time specified, were they so in Valley county with the knowledge of plaintiff, and in the ordinary method of conducting their business for the purpose of grazing in said Valley county and fitting them for market? No answer.

"(10) When the plaintiff turned out its cattle on the public range near its home ranch in Chouteau county in the years 1901 and 1902, did it know that in the ordinary movements of those cattle, a portion of them would find their way into Valley county? Ans. Yes.

"(11) Did said cattle, the cattle mentioned in the preceding question, get into Valley county and run at large there so that on the first Monday in March, 1903, there were thirteen hundred head of such cattle in Valley county? Ans. We cannot agree.

"(12) Were the cattle running at large in Valley county on the first Monday in March, 1903, assessed for taxation purposes in any other county than Valley for that year? Ans. We cannot agree.

"(13) Does any portion of the customary range of the plaintiff extend into Valley county? Ans. Yes.

"(14) If you say there does, how many miles east of the boundary line between Chouteau and Valley counties does such range exist? Ans. Nine miles."

Upon these findings a judgment was rendered and entered in favor of the respondent. The record presented for consideration is the judgment-roll, and the question presented for review is whether the special verdict rendered by the jury sustains the judgment.

The appellants contend that important issues involving the merits of the controversy are undetermined, and as a result a mistrial occurred. The only question presented for determination is whether the findings or special verdict sustain the judg-

ment. We think this interrogatory must be answered in the negative.

Section 1100 of the Code of Civil Procedure reads as follows: "The verdict of a jury is either general or special. A general verdict is that by which they pronounce generally upon all or any of the issues, either in favor of the plaintiff or defendant; a special verdict is that by which the jury finds the facts only, leaving the judgment to the court. The special verdict must present the conclusions of fact as established by the evidence, and not the evidence to prove them; and those conclusions of fact must be so presented as that nothing shall remain to the court but to draw from them conclusions of law."

A special verdict should find all the facts which are necessary to enable the court to determine by the consideration of the pleadings and the verdict alone which party is by law entitled to a judgment, without reference to the evidence. (Clementson on Special Verdicts, p. 204; *Garfield* v. *Knight's Ferry etc. Co.,* 17 Cal. 511; *Kiel* v. *Reay,* 50 Cal. 61; 22 Ency. of Pl. & Pr., p. 984, and cases cited; 29 Ency. of Law, 2d ed., p. 1029, and cases cited; *Breeze* v. *Doyle,* 19 Cal. 102; *Lyons* v. *Leimback,* 29 Cal. 139.)

In the case of *Flowerree Cattle Co.* v. *Lewis & Clark Co.,* 33 Mont. 32, 81 Pac. 398, this court said: "Sections 3697 and 3700, Political Code, provide generally for the assessment of property. Section 3711 provides for the assessment of the property of a corporation, and provides that it shall be assessed in the county where such property is situate. These provisions are general in their character, and apply equally to all kinds of property. The legislature then made specific provisions for the assessment of particular property under certain conditions. For instance, section 3714 provides that the personal property belonging to the business of a merchant or manufacturer must be listed in the county, town or district where the business is carried on. Section 3715 provides that the personal property of an express, transportation, or stage company, steamboats, vessels, or other water craft, must be listed and assessed in the

county, town, or district where such property is usually kept. Section 3716 provides that the personal property and franchises of gas and water companies must be assessed in the county where the principal works are located. And finally, section 3720 provides that livestock belonging to a permanent resident of this state must not be listed or assessed while such stock is in transit, nor until it arrives in the county where the person owning the same resides, and must be listed and assessed in such county. If the stock runs at large in another county than the one in which the owner resides, it must be assessed in such other county.

"While in some instances the meaning of the lawmakers may be somewhat obscure, we are of opinion that what was intended was this: that all property shall be assessed in the county which is its home. If the property be real estate, its actual *situs* determines the question of its home; if personal property belonging to a merchant, the county where the merchant's business is conducted determines the home of such property; and likewise, if the property be range stock, its home is its accustomed range —in this case, Teton county. Any other construction would lead to the greatest possible confusion and open the door to tax dodging, for it was never intended that the county within which the particular personal property may chance to be casually or in a transitory sense on the first Monday of March shall be the county entitled to assess and collect the taxes upon it."

In the case at bar the jury found that the "accustomed range" of the cattle was in Chouteau and Valley counties. They failed to find whether there were thirteen hundred head of cattle belonging to plaintiff running at large in Valley county on the first Monday in March, 1903, but the court entered judgment upon a verdict for plaintiff in the full amount of the taxes on the whole thirteen hundred head. The jury also failed to find whether the cattle were assessed for taxation in any other county than Valley.

The conclusion is unavoidable that these findings were not so presented as that nothing remained to the court but to draw

from them conclusions of law. They did not determine all of the issues of fact presented by the pleadings and necessarily included in the judgment.

The judgment of the district court is reversed, and the cause remanded for a new trial.

*Reversed and remanded.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE HOLLOWAY concur.