STATE ex rel. SOUDERS, Relator, *v.* DISTRICT COURT ET AL., Respondents.

(No. 6,990.)

(Submitted May 18, 1932.  Decided June 24, 1932.)

[12 Pac. (2d) 852.]

*Mr. John G. Skinner* and *Mr. S. C. Merriman,* for Relator, submitted a brief and argued the cause orally.

*Mr. E. P. Conwell* and *Mr. C. C. Rowan,* for Respondents, submitted a brief; *Mr. Rowan* argued the cause orally.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

This proceeding seeks to invoke the supervisory power of this court over the action of the district court in requiring relator to deposit in court the amount of taxes, penalties and interest due to Carbon county before being permitted to maintain an action instituted by him to enjoin the issuance of a tax deed.

From the record it appears that relator commenced an action in the district court against the county, the board of county commissioners and the county treasurer to enjoin the issuance of a tax deed after notice of application therefor had been

served upon him and before the right of redemption had expired.

The notice of application for the deed states: ''You will please take notice that the following described property, situated in the county of Carbon, State of Montana: The lots numbered seven (7), eight (8) nine (9) ten (10) eleven (11) in Block numbered forty-two (42) in the Original Plat of the City of Red Lodge, Carbon county, Montana, was on the 1st day of October, 1923, sold for delinquent taxes; that the whole of said property was sold on said date for the sum of Thirteen Hundred Thirty-two & 19/100 Dollars ($1,332.19) ; that said property was struck off to Carbon county, as the purchaser, at said delinquent tax sale; and that there is now due and owing to Carbon county upon said property for taxes to date the sum of Fifteen Thousand One Hundred Seventy-eight & 65/100 Dollars ($15,178.65). That the time when the right of redemption will expire and when the purchaser will apply for a tax deed is the 1st day of April, 1931, at one o'clock P. M. of said day. The owner (or owners), mortgagee (or mortgagees), assigns (or assignees) of said mortgage (or mortgages) above described may redeem said property by paying the amount due said county and all fees, percentages, penalties and costs. Notice is hereby further given that Carbon county, State of Montana, in accordance with an order and resolution, duly made by the board of county commissioners of said county, unless the property described is in the meantime redeemed, will on the 1st day of April, 1931, apply to the treasurer of Carbon county, State of Montana, for a tax deed for said above described property.''

The complaint alleges that the property was in fact sold in two separate parcels and was not sold on October 1, as recited in the notice, but on October 2, 1923; that the sum of fifty cents for each certificate of sale was included as a part of the purchase price contrary to section 2191, Revised Codes 1921, as amended (Laws 1929, Chap. 31), and that therefore the two certificates were and are illegal; that the certificates are invalid because they do not recite that there was no

purchaser in good faith for the property on the first day it was offered for sale, but show on their face facts which, it is contended, show that the county was a competitive bidder.

By way of conclusion the complaint alleges on information and belief that "the amount stated in said notice of application for tax deed of said property is largely in excess of the amount actually due said county for taxes on said property, and that said amount includes costs, penalties and interest that are not legal charges against said property, and said amount is not the correct amount actually due said county for taxes, penalties and interest against said above described properties."

It then alleges that the taxes assessed against the property were exorbitant, and that there was discrimination against plaintiff in the assessment and appraisement of his property during each year for which taxes are delinquent; that plaintiff has on numerous occasions appealed to the county commissioners for a reduction thereof without avail; that the taxes for each year are more than three times as great as they would have been if the property had been fairly and equitably assessed; that, notwithstanding the purchase of the property by the county in 1923, the defendants exposed the property for sale each year thereafter until and including the year 1929, and the county each year became the purchaser thereof and obtained a certificate of sale, contrary to section 2231, Revised Codes 1921; that included in the amount specified in the notice of application for a deed as necessary to effect a redemption of the property was the cost of selling the property each year; that in consequence the notice of application is void in that it does not apprise plaintiff of the amount actually due the county.

After the complaint was filed, the court, acting under the authority of Chapter 85, Laws of 1927, and by virtue of an affidavit by the county treasurer, acting for all defendants, issued an order to show cause requiring plaintiff, if he chose to question the tax sale proceedings, to deposit in court the sum of $15,178.65 on or before July 28, 1931, or show cause on that day why he should not do so. The order to show cause

recites that the sum of $15,178.65 does not include any charge of duplicate certificates of sale.

In response to the order to show cause a hearing was had, after which the court made an order in which it is recited that evidence was introduced by defendants proving that the total amount of taxes due against the property was $15,178.65, and that "plaintiff and defendants having stipulated that said amounts were the total amounts levied and assessed against said property, with penalty and interest, and which are now unpaid." The order further recites that the total amount of taxes, interest and penalties, which would have accrued if the property had been regularly and legally assessed and sold for delinquent taxes and was to be redeemed by the owner, was $15,178.65 on April 1, 1931. The order then requires plaintiff to pay into court this amount with interest at eight per cent. per annum from April 1, 1931, and that unless so paid, plaintiff shall be deemed to have waived any defects in the tax proceedings and any right of redemption, and that title shall be quieted in defendants. The propriety of this order is questioned in this proceeding.

The order segregated the tax due on the property embraced in each certificate of sale and afforded plaintiff the opportunity to deposit the amount due against the property embraced in each certificate of sale separately without depositing that due against the other, if he so desired. It should also be said that, since the action was commenced in the court below, a tax deed was issued.

Relator contends (1) that Chapter 85, Laws of 1927, has no application to a proceeding to enjoin the issuance of a tax deed; and (2) that Chapter 85 is invalid for several reasons.

Is Chapter 85 applicable to an action to enjoin the issuance of a tax deed? It authorizes the making of an order requiring the deposit of money in court "in any action * * * brought to set aside or annul any tax deed, or to quiet title, or to determine the rights of such purchaser, including the county, or his successors, to real property claimed to have been acquired by reason of tax proceedings or a tax sale. * * * "

(Sec. 1.) The action commenced by relator was one to enjoin the issuance of a tax deed. Its prosecution will result in an adjudication of the rights of the county in the property claimed to have been acquired by reason of a tax sale, and thus falls within the terms of the statute. The Act relates not alone to proceedings to set aside tax deeds, but applies also to a tax sale prior to the issuance of a deed.

Is Chapter 85 valid? It is contended that the title to the Act is insufficient to meet the requirements of section 23 of Article V of the Constitution. The title, among other things, states that the Act is one "providing a summary method whereby such purchasers at tax sales, or their successors, may have their respective rights adjudicated." The requirement of a deposit of the amount of taxes due is germane to the matters expressed in the title, and hence sufficient to meet the requirements of section 23, Article V.

The next attack upon Chapter 85 is that it is in conflict with section 6 of Article III of the Montana Constitution, which provides: "Courts of justice shall be open to every person, and a speedy remedy afforded for every injury of person, property, or character; and that right and justice shall be administered without sale, denial, or delay."

The authorities are conflicting as to whether the legislature may require a party questioning a tax deed to make a deposit for the purpose of reimbursing the holder of the deed before prosecuting the action. We think the better reasoned cases support the view that such an Act is valid, when applied to a case such as this, where no attack is made upon the tax as such, but only upon the tax sale proceedings.

Cooley, in his work on Taxation, in commenting upon a court decision condemning such a statute, said: "If this statute were confined to the requirement of a payment or tender of legal taxes and costs for which the sale may have been made, the soundness of the conclusion might well be made a question." (Cooley on Taxation, 4th ed., sec. 1508.) Continuing in the same section, that eminent author says: "No one is denied a remedy in the courts when he is merely required to

submit to a condition which, under the circumstances, is reasonable. Conditions to the assertion of a right in court are imposed in many cases, none of which is supposed to work to the detriment of justice. The requirement of security from a plaintiff in replevin or attachment is an instance, and the payment of taxes upon the legal process or upon the entry of the suit is another. Courts of equity, on general principles of right, are frequently in the habit of imposing conditions where one seeks in equity to restrain a tax, only a part of which is illegal. The authority of the legislature over the whole subject of legal remedies is very ample, and it is not to be supposed that any general declaration of the right of the citizen to his day in court was intended to preclude the legislature from exercising its authority to require him to do equity when he did come. Other cases have distinctly affirmed the right to require payment of the taxes as a condition precedent to a recovery of the land from the tax-purchaser, when it was proposed to do so on the ground of the invalidity of the tax-proceedings. These decisions, if limited in their application to cases in which taxes were justly and equitably a charge upon the land, and only failed to become a legal charge by reason of the negligence or mistake of officers in the discharge of their duties under the tax-law, may fairly be said to rest upon sound reasons of broad equity, and to be supported on the same grounds which support remedial laws in general.''

It is well settled that it may be made a condition to the granting of relief on application to set aside a tax sale, that the owner pay or tender to the holder of the tax certificate whatever the holder paid for the certificate, with interest or, at least, so much thereof as was for taxes legally due. (37 Cyc. 1375 and 1496.) This is done in recognition of the equitable maxim that one who seeks equity must do equity. (*Larson* v. *Peppard*, 38 Mont. 128, 129 Am. St. Rep. 630, 16 Ann. Cas. 800, 99 Pac. 136.) In Illinois a statute similar to the one here involved has been condemned. (*Wilson* v. *McKenna*, 52 Ill. 43; and see *Reed* v. *Tyler*, 56 Ill. 288.) In the later case of *City of Chicago* v. *Collin*, 302 Ill. 270, 134 N. E.

751, the supreme court of Illinois upheld an Act which prohibited the entry of final judgment setting aside a tax deed until the claimant made reimbursement to the party holding the deed.

The statute here questioned, in effect, merely requires plaintiff to give security by making the deposit to evidence his good faith, and as a guaranty of his readiness and ability to do equity. We think the supreme court of Wisconsin announced the correct rule in *Lombard* v. *McMillan*, 95 Wis. 627, 70 N. W. 673, 674, wherein it is said: "It is contended on the part of the appellant that Chapter 278, Laws 1883, for failure to comply with which the trial court decided that the action was prematurely brought and should be abated, is unconstitutional and void under Article I, section 9, which provides that 'every person is entitled to a certain remedy in the laws, for all injuries or wrongs which he may receive in his person, property, or character; he ought to obtain justice freely and without being obliged to purchase it, completely and without denial, promptly and without delay, conformably to the laws.' A large number of decisions are brought to our attention ·from other states to show that statutes there which require the payment of illegal taxes as a condition precedent to the right to institute an action to avoid taxes, or tax deeds based thereon, offend against this constitutional safeguard; but such adjudications do not apply here. The Act in question does not require the former owner of lands, as a condition for bringing an action to void an illegal tax deed based thereon, to part absolutely with anything, but only as an earnest of good faith that he will finally abide by the decision of the court respecting the payment of legal taxes that may be determined to be equitably chargeable to the lands requires the deposit mentioned in the Act. The essential principle involved has been repeatedly challenged in this court, and as often sustained. (*Flanders* v. *Town of Merrimack*, 48 Wis. 567, 4 N. W. 741; *Wakeley* v. *Nicholas*, 16 Wis. 588; *Smith* v. *Smith*, 19 Wis. 615 [88 Am. Dec. 707]; *Finney* v. *Ackerman*, 21 Wis. 268; *Knight* v. *Barnes*, 25 Wis. 352; *Philleo* v. *Hiles*, 42 Wis. 527.) In both

legal and equitable actions, legislation requiring a deposit of taxes, void simply on the ground of irregularities, but not inequitable, as a condition of recovery, has been sustained, as the cases referred to abundantly show.''

In the later case of *Wisconsin Real Estate Co.* v. *City of Milwaukee*, 151 Wis. 198, 138 N. W. 642, 645, the court said: ''Since section 1210h-1 is construed to apply only to cases where there is a defect or error in the tax proceedings, and not to cases where there is an absolute want of power to tax, the contention that it violates section 1 of the Fourteenth Amendment to the Constitution of the United States, and Article V of the amendments to the Constitution of the United States, and sections 1 and 9 of Article I of the Constitution of this state, falls. The question of the constitutionality of the section is ruled by the decision in *Lombard* v. *McMillan*, 95 Wis. 627, 70 N. W. 673.''

The conditions here bring the case within the rule of the Wisconsin cases. There is no claim here of any want of authority in the taxing officers to make the assessments resulting in the tax. True, there is the claim that the valuation placed upon the property for assessment purposes was exorbitant. But the courts are now powerless to grant relief in this respect. The remedy was before the state board of equalization after the unsuccessful appeal to the county board. (*Belknap Realty Co.* v. *Simineo*, 67 Mont. 359, 215 Pac. 659.)

A statute similar to Chapter 85 was upheld in *Eberhard* v. *Purcell*, 50 Idaho, 393, 296 Pac. 593, in so far as it applied to a case, as here, where the objection to the tax proceedings went to matters of form or to defects in the proceedings, rather than to the validity of the tax. A similar statute was also upheld in *Coats* v. *Hill*, 41 Ark. 149, and one of like import was sustained in *Moore* v. *Byrd*, 118 N. C. 688, 23 S. E. 968.

The statute is no more objectionable than one requiring a deposit on commencing action to be credited on costs, and

such a statute has been upheld. (*Harbison* v. *George,* 228 Ky. 168, 14 S. W. (2d) 405, and cases cited therein.)

It should be noted that Chapter 85 is not open to the objections contained in the Act condemned in *Weller* v. *City of St. Paul,* 5 Minn. 95 (Gil. 70). The act there considered required the deposit of all state, county and city taxes before being permitted to enter the courts to contest an assessment for local improvements only; and the plaintiff was there also attacking the validity of the local assessment. Here the validity of the tax itself is not questioned on any ground available to plaintiff at this time. Also the statute involved in the case of *Bennett* v. *Davis,* 90 Me. 102, 37 Atl. 864, a leading case condemning a similar statute, made no provision, as does Chapter 85, for measuring the amount of the deposit by the taxes due, but required a deposit of the amount claimed.

Moreover, there is authority that, even in the absence of statute so requiring and even where the amount of the tax is questioned, the maxim that a person coming into a court of equity must first do equity, requires the plaintiff who would seek to enjoin the collection of a tax to pay so much thereof as is plainly seen to be valid. The supreme court of the United States, in speaking of this question in *German Nat. Bank* v. *Kimball,* 103 U. S. 732, 733, 26 L. Ed. 469, said: ''We have announced more than once that it is the established rule of this court that no one can be permitted to go into a court of equity to enjoin the collection of a tax until he has shown himself entitled to the aid of the court by paying so much of the tax assessed against him as it can be plainly seen he ought to pay; that he shall not be permitted, because his tax is in excess of what is just and lawful, to screen himself from paying any tax at all until the precise amount which he ought to pay is ascertained by a court of equity; and that the owner of property liable to taxation is bound to contribute his lawful share to the current expenses of government, and cannot throw that share on others while he engages in an expensive and protracted litigation to ascertain that the amount which he is assessed is or is not a few

dollars more than it ought to be. But that before he asks this exact and scrupulous justice he must first do equity by paying so much as it is clear he ought to pay, and contest and delay only the remainder.''

The Act is not in conflict with section 6 of Article III of the Constitution.

The Act is also assailed as being in conflict with section 13 ■ ■ of Article XV of the Montana Constitution, which provides: ''The legislative assembly shall pass no law for the benefit of a railroad or other corporation, or any individual or association of individuals, retrospective in its operation, or which imposes on the people of any county or municipal sub-division of the state, a new liability in respect to transactions or considerations already passed.''

It is contended that, since, under the law existing at the time the property was sold for taxes, the plaintiff was not required to make a deposit in order to question the validity of the proceedings, the effect of Chapter 85 is to impose additional obligations with respect to a past transaction. Proceedings authorized by statute for a sale of property for delinquent taxes were designed primarily not for the purpose of depriving the taxpayer of his property, but as a means of collecting the tax against the property. There is no vested right in a mode of procedure for collecting taxes. And a law providing a new or additional remedy therefor is not objectionable as divesting vested rights. (12 C. J. 968.) The state may adopt new remedies for the collection of taxes or assessment without violating constitutional provisions. (*New-man* v. *Commercial Waterway District No. 1 of King County,* 125 Wash. 577, 217 Pac. 9.)

Chapter 85 is not invalid as being in conflict with section 13 of Article XV. The district court properly ordered plaintiff to make the deposit complained of. Relator's application is denied and the proceeding dismissed.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES GALEN, FORD and MATTHEWS concur.