WALTER R. O'BRIEN, Plaintiff and Appellant, v. DONNA ROSS, as County Treasurer of Judith Basin County, Montana, CHARLES A. LOBERG, Acting as Deputy County Treasurer of Judith Basin County, Montana, EDWARD B. HOLZFASTER, RUDOLPH LARSON and ARNOLD HAACK, as the Board of County Commissioners of Judith Basin County, Montana, a body politic and one of the subdivisions of the State of Montana, Defendants and Respondents.

No. 10708
Submitted May 11, 1964. Decided August 26, 1964.
394 P.2d 1013

J. E. McKenna and Donald E. Ronish (argued), Lewistown, for appellant.

Paul J. Murphy, County Atty. (argued), Stanford, for respondent.

MR. JUSTICE DOYLE delivered the Opinion of the Court.

Appeal from a judgment rendered in the district court, Judith Basin County, dismissing plaintiff's complaint with prejudice.

The facts of this case are that plaintiff, appellant herein, was, during the years 1959 to 1960, a rancher and resident of Fergus

County, Montana. During that period the plaintiff either owned, leased or controlled about 4,000 acres of land situate in Judith Basin County, approximately 2,000 acres of which were devoted to pasture. The record further indicates that plaintiff wintered between 200 and 400 head of cattle on this land located in Judith Basin County, and that some of this stock probably remained there permanently. On April 5, 1960, the appellant appeared before the county assessor of Judith Basin County, signed and turned in his assessment on 200 head of stock cows with an assessed valuation of $12,000; neither at that time nor any time thereafter did the appellant, either orally or in writing, protest that assessment.

On May 7, 1963, plaintiff having failed to pay the taxes on the property so assessed, the treasurer of Judith Basin County, pursuant to the provisions of R.C.M.1947, § 84-4202, duly noticed up for sale certain personal property of the plaintiff. Shortly thereafter appellant filed his complaint in the district court of Judith Basin County and obtained a temporary restraining order to enjoin the defendant county from proceeding further under the notice of sale. Defendant's answer and return were filed and a hearing was had on July 24, 1963. From a judgment dismissing the complaint and action, the plaintiff prosecutes this appeal.

Appellant contends that the lower court erred in dismissing the complaint and vacating the restraining order; and further, that the judgment would, in effect, validate an otherwise illegal assessment and permit the defendant to satisfy the tax lien created thereby by selling property against which no such lien exists.

To sustain his position appellant seeks to bring the case within the purview of the rule laid down by this court in the case of Peterson v. Granite County, 76 Mont. 214, 245 P. 946 (1926), and within the proviso of section 84-5202, R.C.M.1947.

The Peterson case was an action to recover taxes paid under protest to Granite County by the plaintiff who was a resident

of Powell County. The livestock involved in that case were sheep which were "kept in feeding pens or other inclosure in Granite County" (76 Mont. at 215, 245 P. at 946). In affirming the judgment of the lower court it was held that the sheep in that case were properly subject to the proviso of section 2069, Revised Codes of 1921 (now R.C.M.1947, § 84-5202), and hence, were taxable in their home county and no other.

The appellant here seizes upon the quoted language of the Peterson case and insists that the 2,000 acre tract, because it was fenced, constitutes an "enclosure" within the meaning of the Peterson case and section 84-5202, R.C.M.1947. We cannot agree. To so construe the language of the statute would be to attribute to it a meaning which would effectively thwart the legislative purpose for which it was enacted.

Section 84-5202 provides that:

"All livestock pastured, ranged or grazed, or which does pasture, range or graze in any county or counties of the state during any year, other than the county where the said livestock is usually kept by the owner thereof on lands claimed by him, to be known as the home county, shall be assessed for taxation, and such tax collected in the county in which it is found at the time fixed by law for the assessment of all property in the state, at the rate of levy of the home county, and it shall be the duty of the owner thereof, or his agent, at the time of the assessment of such livestock, to make and deliver to the assessor of the county where such livestock is found, and to the assessor of the home county, a written statement, under oath, showing the different kinds of such livestock within such county belonging to him or under his charge, with their marks and brands, and showing the full time during the current year that such livestock and every part, portion and kind thereof, has been and will be, within any county or counties, other than the home county, and such livestock and the owner thereof, shall be liable to the said county or counties for the taxes thereon, as other property is liable, and the taxes thereon shall be ap-

portioned between the home county and such other county or counties as hereinafter provided; provided, however, that the tax on all livestock fed in feeding pens or other enclosures in any county or counties other than the home county of such livestock, shall not be apportioned as provided herein, but shall be paid in full to the county treasurer of the home county of such livestock."

It is obvious that the thrust of the section is directed at livestock operations involving pasturing or grazing livestock in counties other than the one in which the owner resides. Plaintiff, in his testimony given at the proceedings below, admitted that the enclosures were not feed pens and that it "wasn't a feed lot proposition." Whether or not the acreage upon which such livestock grazes was enclosed by a fence is not here relevant; the fact remains that the cattle in the instant case were grazing on lands other than in the home county at the time fixed by law for assessment and, hence, they were taxable in that other county in accordance with the foregoing section.

To further sustain his position, appellant cites and quotes at length from Flowerree Cattle Co. v. Lewis and Clark County, 33 Mont. 32, 81 P. 398. We think the reference inapt. True, the facts there before the court were similar to those now before us. However, the statute being construed there was section 3720, Political Code, 1895, which dealt with livestock in transit and livestock running at large in a county other than the one in which their owner resided. Moreover, the Flowerree case was decided five years before the enactment of section 1, Chapter 125, Laws 1909, which, as amended, presently constitutes section 84-5202, and which, we believe, is controlling in this instance.

Because the property seized and noticed up for sale by the respondent county was not the 200 head of cattle which had been assessed in 1960, the plaintiff insists that the lien created by sections 84-3807, 84-3808 is not available to the re-

spondent in this instance. It is argued that section 84-3808 is controlling; that it establishes and limits tax liens to only that property which has been assessed; that the amendment to that section in 1937 repealed all statutes in conflict therewith, including section 84-3807; and that the 1963 amendments to section 84-3808 and section 84-4202, have no effect in the instant proceedings since the assessment was made prior to their enactment. We do not agree. Section 84-3808, subd. (a), provides, inter alia, that every "tax due upon personal property is a prior lien *upon any or all of such property.*" (Emphasis supplied.)

Whether the Legislature intended that the language above-quoted applies to all personal property of the delinquent or to just the property assessed can most effectively be determined by looking to the statute which provides for the enforcement of that lien. Section 84-4202 as amended by section 1, Chapter 165, Laws 1963, in part, provides that "The county treasurer must * * * levy upon and take into his possession such personal property against which a tax is assessed, *or any other personal property in the hands of the delinquent taxpayer,* and proceed to sell the same * * *." (Emphasis supplied.)

The appellant's argument that these amendments can have no application since they came into being subsequent to the date of assessment finds scant support in the majority of jurisdictions and none in Montana.

The general rule is that it is within the constitutional power of a state to change the remedies provided by law for the assertion of legal rights and to make such change applicable to existing causes of action, so long as there is no impairment of obligation of contract or disturbance of vested rights, and it may change the mode of collecting taxes which have already been assessed at any time before they have been paid or otherwise discharged or released, and without any violation of the constitutional rights of a property owner. A delinquent taxpayer has no vested right in an existing mode of collecting

taxes, 51 Am.Jur., Taxation, § 990; 3 Cooley, Taxation, § 1328; Gray, Limitation of Taxing Power, § 1219, and citations therein.

In State ex rel. Souders v. District Court, 92 Mont. 272, 282, 12 P.2d 852 (1932), this court stated that "* * * Proceedings authorized by statute for a sale of property for delinquent taxes were designed primarily not for the purpose of depriving the taxpayer of his property, but as a means of collecting the tax against the property. There is no vested right in a mode of procedure for collecting taxes. And a law providing a new or additional remedy therefor is not objectionable as divesting vested rights. * * * The state may adopt new remedies for the collection of taxes or assessment without violating constitutional provisions." (92 Mont. at 282, 12 P.2d at 855). Neither do such provisions impinge upon the rights secured by the federal constitution. (League v. Texas, 184 U.S. 156, 22 S.Ct. 475, 46 L.Ed. 478 (1902)).

■ Nor do the amendments subject the appellant to any greater liability than that which existed at the time of the assessment. In Montana, it is the individual who pays the tax; the property is resorted to for the purpose of ascertaining the amount of the tax and for the purpose of enforcing its payment where the owner makes default. Calkins v. Smith, 106 Mont. 453, 78 P.2d 74; Christofferson v. Chouteau County, 105 Mont. 577, 74 P.2d 427; Ford Motor Co. v. Linnane, 102 Mont. 325, 57 P.2d 803; State ex rel. Tillman v. District Court, 101 Mont. 176, 53 P.2d 107, 103 A.L.R. 376.

■ The appellant also argues that his voluntary appearance at the Judith Basin County Assessor's office and the placing of his cattle upon the assessment rolls therein is of no import. However, this may be in the case of payment to the wrong taxing authority under a mistake of fact, the rule, generally is otherwise: "* * * one who procures particular property to be assessed in his name, or returns it to the assessor as his, is estopped to deny his liability for the taxes on it." 84 C.J.S.

Taxation § 65; Litchfield v. Marin County, 130 Cal.App.2d 806, 280 P.2d 117.

Appellant also raises the questions of whether the payment of a tax to the wrong county relieves the taxpayer of payment to the proper county and the related issue of what is the proper remedy to avoid the collection of an illegal tax. Inasmuch as we hold that the tax assessed by Judith Basin County was valid and the procedures for the collection thereof were in conformity with the statutory requirements, these matters need not now be considered, but parenthetically we observe that appellant paid no taxes in any county on 200 head of cattle.

Accordingly, the judgment of the lower court is affirmed.

It is so ordered.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES CASTLES, JOHN CONWAY HARRISON and ADAIR concur.