HAYES, RESPONDENT, *v.* SMITH, COUNTY TREASURER, APPELLANT.

(No. 4,573.)

(Submitted September 13, 1920. Decided September 27, 1920.)

[192 Pac. 615.]

*Taxation—Livestock—Migratory Stock Law—Unconstitutionality —Uniformity Rule.*

Taxation—Property in Transit not Taxable.
    1. *Obiter:* Property being transported in interstate commerce, while actually in transit through the state is not taxable.

Same—Personal Property—Taxing Power—*Situs* of Property.
    2. The taxing power of the state is limited to subjects which have acquired a *situs* within it for the purpose of taxation.

Same—Date on Which Property Taxable—Power of Legislature.
    3. The legislature has the power to fix a definite date as to which the *situs* of personal property for taxation is to be determined.

Same—*Situs* of Property.
    4. *Held,* that in order for personal property, other than the net proceeds of mines, to acquire a *situs* for the purpose of taxation, it must be within the state and subject to its jurisdiction at 12 o'clock noon on the first Monday in March.

Same—Migratory Livestock—Statute—Unconstitutionality.
> 5. *Held,* that section 2531, Revised Codes, which provides for the taxation of livestock brought into the state for grazing purposes and which by implication confines its operation to stock brought in after March 1 of any one year, without including all other property of the same class so brought in, is unconstitutional as violative of the uniformity rule in matters of taxation.
>
> [As to constitutionality of fencing and stock laws, see note in 6 A. L. R. 1628.]

Same—Discrimination Between Property of Same Class.
> 6. The state may designate one date to which the assessment of property belonging to one class shall relate, and a different date as to property belonging to a different class, but may not discriminate against particular property belonging to any class.

*Appeal from District Court, Sanders County; R. Lee Mc-Culloch, Judge.*

ACTION by Joseph M. Hayes against Mary Smith, as treasurer of Sanders County, Montana. Judgment for plaintiff and defendant appeals. Affirmed.

Cause submitted on briefs of Counsel.

*Mr. S. C. Ford,* Attorney General, *Mr. Frank Woody,* Assistant Attorney General, and *Mr. A. A. Alvord,* for Appellant.

The first contention of respondent to be considered is that the statute or law providing for such assessment and taxation was and is unconstitutional and that it does not provide for the uniformity of taxation.

Section 2531 of the Revised Codes, the statute in issue, makes no discrimination as to nonresidents, for it contains these words, "any person or persons whomsoever." It applies to citizens of Montana bringing livestock into this state for the purpose of grazing, as well as to nonresidents. (*Kelley* v. *Rhoads,* 7 Wyo. 237, 75 Am. St. Rep. 904, 39 L. R. A. 594, 51 Pac. 593.) The rule laid down in 37 Cyc. 809, 810, is as follows: "Also it is competent for a state to lay taxes on cattle owned by nonresidents and driven into the state for grazing purposes at certain seasons of the year."

A state statute authorizing the levying of a tax upon livestock which are brought into the state for a purpose similar to the purpose for which livestock are maintained therein, as for instance, for grazing, or for the purpose of being fed, is not an unconstitutional statute; and the tax is a valid tax, notwithstanding the fact that the livestock may have been brought into the state for a short period of time, or were through cattle or were ultimately designed for shipment into another state. (*Myers* v. *Baltimore County Commrs.*, 83 Md. 385, 55 Am. St. Rep. 349, 34 L. R. A. 309, 35 Atl. 144; *Waggoner* v. *Whaley*, 21 Tex. Civ. App. 1, 50 S. W. 153; *Prairie Cattle Co.* v. *Williamson*, 5 Okl. 488, 49 Pac. 937; *Collins* v. *Green*, 10 Okl. 244, 62 Pac. 813; *Lasater* v. *Green*, 10 Okl. 335, 62 Pac. 816; *Halff* v. *Green*, 10 Okl. 338, 62 Pac. 816; *Russell* v. *Green*, 10 Okl. 340, 62 Pac. 817.)

The United States supreme court in the last two paragraphs of its opinion in the case of *Kelley* v. *Rhoads*, 188 U. S. 1, 47 L. Ed. 359, 23 Sup. Ct. Rep. 259 [see, also, Rose's U. S. Notes], indirectly recognized the constitutionality of a statute very much like ours.

A careful consideration of section 2510, Revised Codes, leads one to believe that the law-making power of the state did not intend that only property in the state on the first Monday of March should be assessed, but that the ownership of the property on that date should determine to whom the property should be assessed. Even if this section and section 2531 provide two different methods of assessment, levy and collection, that would not, according to the cases, affect their constitutionality. A statute cannot be held unconstitutional because it established a different mode of assessment, levy and collection. (*People* v. *Central Pac. R. Co.*, 43 Cal. 398; *Frontier Land & Cattle Co.* v. *Baldwin*, 3 Wyo. 764, 31 Pac. 403; *Louisville & N. A. R. Co.* v. *State*, 25 Ind. 177, 87 Am. Dec. 358; *City of Dubuque* v. *Chicago D. & M. R. Co.*, 47 Iowa, 196; *Francis* v. *Atchison T. & S. F. R. Co.*, 19 Kan. 303; *Missouri River Ft. S. & G. R. Co.* v. *Morris*, 7 Kan.

210; *Otta County Commrs.* v. *Nelson,* 19 Kan. 234, 27 Am. Rep. 101; *Langhorne* v. *Robinson,* 20 Gratt. (Va.) 661; *Wisconsin Cent. R. Co.* v. *Lincoln Co.,* 57 Wis. 137, 15 N. W. 121; *Pittsburgh, C. C. & St. L. R. Co.* v. *Backus,* 154 U. S. 425, 38 L. Ed. 1036, 14 Sup. Ct. Rep. 1114 [see, also, Rose's U. S. Notes].)

Laws of 1895, page 105, Chapter 61, providing that livestock driven into the state for the purpose of grazing after the first Monday in April in any year shall be assessed for taxes as if it had been in the county at the time of the annual assessment is not unconstitutional, as discriminating between livestock and other property. (*Wright* v. *Stinson,* 16 Wash. 368, 47 Pac. 761.)

It has been held that a statute regulating the assessment and taxation of logs belonging to nonresidents is not unconstitutional in providing for an assessment in April, while logs belonging to residents are assessed in May. (*Nelson Lumber Co.* v. *Loraine,* 22 Fed. 54.)

Is the taxation as alleged in respondent's complaint double taxation and void for that reason? We believe not. (37 Cyc. 755 (3) gives this as the rule in such cases: "Each state, however, with regard to the taxation of property within its territorial limits is sovereign and independent; and the taxation of property which is within the jurisdiction of the state is not rendered objectionable as double taxation by the fact that the same property is also assessed for taxation in another state." (*Kelley* v. *Rhoads,* 188 U. S. 1, 47 L. Ed. 359, 23 Sup. Ct. Rep. 259 [see, also, Rose's U. S. Notes]; *Spaulding* v. *Adams County,* 79 Wash. 193, 140 Pac. 367; *Brown* v. *Houston,* 33 La. Ann. 843, 39 Am. Rep. 284; s. c., 114 U. S. 622, 29 L. Ed. 257, 5 Sup. Ct. Rep. 1091; *Coe* v. *Town of Errol,* 116 U. S. 517, 29 L. Ed. 715, 6 Sup. Ct. Rep. 475; *Pullman's Palace Car Co.* v. *Pennsylvania,* 141 U. S. 18, 30, 35 L. Ed. 613, 619, 11 Sup. Ct. Rep. 876 [see, also, Rose's U. S. Notes]; *Nelson Lumber Co.* v. *Loraine,* 22 Fed. 54; *Dyer* v. *Osborne,* 11 R. I. 321, 23 Am. Rep. 460.)

*Mr. A. S. Ainsworth,* for Respondent.

Counsel for appellant evidently take the view that our assessment and taxation laws do not provide for any definite time which is to be taken as the date for assessment each year. While it is true that the assessor has until the second Monday of July in which to complete his assessment, yet this has nothing whatsoever to do with the point we make, which is that he must assess such property to the persons by whom it was owned or claimed or in whose possession or control it was at 12 o'clock M. of the first Monday of March next preceding. This of course means that the property must be assessable property, and in order to be such must be in the state on that date. Section 2511, Revised Codes of Montana, 1907, in substance provides for this. Our entire system of taxation bears out our contention that assessment of property is to be based on ownership and location on the first Monday of March.

Everything brought into this state after the first Monday of March is absolutely immune from assessment and taxation for that year, except livestock brought into the state for grazing purposes. This in our opinion, of itself, is not uniformity of taxation.

Sheep may be brought into the state any time after the first Monday of March, and will be exempt from taxation for that year providing they are not grazed. In fact, there is no attempt whatsoever to provide for the taxation of any property brought into the state after the first Monday of March, for that year, except for livestock and then it must be grazed or it will be exempt from taxation. This does not seem to us to be classification; it is rather exempting some property and taxing other, and therefore not uniform. (*Graham* v. *Commissioners of Chautauqua Co.,* 31 Kan. 473, 2 Pac. 549; *Carbon County Sheep & Cattle Co.* v. *Board of Commrs.,* 60 Colo. 224, 152 Pac. 903; *Board of County Commrs.* v. *Wilson,* 15 Colo. 90, 24 Pac. 563; *Leonard* v. *Reed,* 46 Colo. 307, 133 Am. St. Rep. 77, 104 Pac. 410; *Spaulding* v. *Patterson,* 46 Colo. 317, 104 Pac. 413; *Norris* v. *City of Waco,* 57 Tex. 635.)

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

On March 1, 1919, Joseph M. Hayes owned and was in the possession of 3,700 sheep in Morrow county, Oregon, where he resided, and where the sheep were duly assessed for taxation for the year 1919. In June following the sheep were shipped, consigned to the Chicago market. On June 19, the shipment reached Thompson Falls, Montana, and there the sheep were unloaded, and for the ensuing three months were grazed in Sanders county, as was permitted by the bill of lading. On July 8, the assessor of Sanders county listed the sheep for assessment and taxation for 1919, and, the tax levy having been made and the tax extended, this property was charged with the sum of $518. Hayes applied to the county board of equalization for a cancellation of the assessment, but without avail, and his appeal to the state board was equally unsuccessful. Thereafter this suit was instituted to enjoin the treasurer from collecting the tax, and in the complaint the foregoing facts are set forth somewhat more in detail. The treasurer appeared by general demurrer, which was overruled, and, declining to plead further, suffered judgment to be rendered and entered in favor of the plaintiff, and appealed to this court.

It is the contention of the plaintiff, concurred in by the district court, that the statute under which the revenue officers assumed to act is in contravention of the provisions of sections 1 and 11, Article XII, of the state Constitution, and for that reason null and void. At the earliest opportunity after our Constitution was adopted, an elaborate revenue measure was passed and approved (Laws 1891, p. 73), which provided generally for the assessment and taxation of all property subject to the jurisdiction of the state, and with minor amendments and modifications that Act has been carried forward and is now in full force and effect.

This legislation was the response to the constitutional mandate that the legislative assembly should pass all laws 'neces-

sary to carry into effect the provisions of Article XII of the Constitution, and particularly the provision in section 11 that all taxes shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax. It is elementary that the taxing power of the state does not extend beyond the territorial limits of the state, and neither does it extend to all subjects actually within the confines of the state, and upon which the state has the physical power to [1] impose a tax, as, for instance, property being transported in interstate commerce, while actually in transit through the state. (*Bacon* v. *Illinois*, 227 U. S. 504, 57 L. Ed. 615, 33 Sup. Ct. Rep. 299 [see, also, Rose's U. S. Notes].)

Whatever may be said of its vast character and sweeping [2] extent, the power of taxation, of necessity, must be limited to subjects within the jurisdiction of the state, or, as otherwise characterized, to subjects which have acquired a *situs* within the state for the purpose of taxation. In most jurisdictions the annual assessment of property subject to taxation is made as of some definite date, and the *situs* of the property determined as of that date. In pursuance of that general [3, 4] policy, our legislature, by the repeated references in the revenue measure, evinced very clearly an intention that in order for personal property, other than the net proceeds of mines, to acquire a *situs* for the purpose of taxation it must be within the state and subject to its jurisdiction at 12 o'clock noon on the first Monday of March. The references will be found in sections 2510, 2511, 2512, 2552, 2556, 2578, 2579, and 2601, Revised Codes, and possibly elsewhere, but the foregoing are sufficient for present purposes. No provision was made for the assessment of property introduced into the state after the first Monday of March, and in practice such property was not assessed for that fiscal year. Those principles have remained constant to the present time, unless modified by the legislation under which plaintiff's property was assessed. The authority of the legislature thus to fix a definite date as of which the *situs* of personal property for taxation is to be

determined cannot be gainsaid, and since our legislature did so, the question of uniformity of taxation is to be determined with reference to that fact.

On March 14, 1901, the Act in question was passed and approved which provided for the assessment and taxation of [5] livestock brought into this state for the purpose of graz-. ing. (Laws 1901, p. 57.) Section 1 of that Act, now section 2531, Revised Codes, reads as follows: "All livestock brought into this state by any person or persons whomsoever, for the purpose of being grazed for any length of time whatsoever, shall be taxed for the year in which such livestock shall be brought into the state." The other sections of the Act relate to the procedure, and are not directly involved here. Although the Act does not in express terms confine its operation to livestock brought into the state for grazing purposes after the first Monday of March, by necessary implication it does so, and such a construction is commanded, otherwise the entire Act would be meaningless. This is the only change, material to the determination of this appeal, which has been injected into the law since the enactment of the revenue statute in 1891. If this Act be upheld, it follows that since March 14, 1901, livestock brought into this state for grazing after the first Monday of March of any given year, immediately acquires a *situs* for the purpose of taxation for that year, whereas all other personal property brought into the state after that date does not, and is not subject to taxation for that year. In other words, plaintiff's sheep are, by the terms of the Act, rendered subject to taxation in Montana for the year 1919, solely because of the fact that they were brought into the state to be grazed. If they had been introduced for any other purpose they would not have acquired a *situs* for taxation during the fiscal year 1919; or if personal property other than livestock, having the same value as plaintiff's sheep, had been brought into the state after the first Monday of March, 1919, it would not have been subject to taxation for that year. It is because of this discrimination that plaintiff

challenges the validity of section 2531 above, and insists that it provides for taxation, not uniform upon the same class of subjects.

The authority of the state to make a proper classification of property for the purpose of taxation is settled beyond controversy in this jurisdiction. (*Hilger* v. *Moore,* 56 Mont. 146, 182 Pac. 477.) But a proper classification implies that there exist real differences as between the subjects constituting the different classes, and excludes the idea of arbitrary selection. (*Northwestern Life Ins. Co.* v. *Wisconsin,* 247 U. S. 132, 62 L. Ed. 1025, 38 Sup. Ct. Rep. 444.)

We are unable to perceive any distinction which can be drawn between a flock of 3,700 head of sheep of a particular breed, size, and description brought into this state after the first Monday of March for the purpose of grazing for any period, and a flock of the same size, breed, description and value brought into the state at the same time for the purpose of being fed in pens for the same length of time, and yet this statute assumes to render the first flock subject to taxation, whereas the other is not. In other words, the attempted classification appears to be entirely arbitrary, and the unjust discrimination apparent.

This subject is not a new one. Migratory stock laws have been enacted in many of the western states, and have received consideration from the highest courts. As early as 1884 a statute very similar in its provisions to the one now under review was before the supreme court of Kansas, and it was held to constitute a distinct departure from the rule of uniformity in the matter of taxation, and therefore unconstitutional and void. (*Graham* v. *Commissioners of Chautauqua County,* 31 Kan. 473, 2 Pac. 549.) Under like circumstances the same result was reached by the supreme court of Colorado in *Board of County Commissioners* v. *Wilson,* 15 Colo. 90, 24 Pac. 563.

Attention is directed to the decision in *Wright* v. *Stinson,* 16 Wash. 368, 47 Pac. 761, and *Kelley* v. *Rhoads,* 7 Wyo.

237, 75 Am. St. Rep. 904, 39 L. R. A. 594, 51 Pac. 593, wherein a contrary conclusion was reached; but there is not any conflict in the decisions at all. While it is true that the migratory stock law of Washington, and the like character of statute in Wyoming, provided for the assessment and taxation of livestock brought into the state for grazing after the date to which the general assessment of property related, the statute in each state also provided for the assessment and taxation of other personal property brought into the state after that date, so that there was not any discrimination against livestock brought into the state for grazing purposes, as was the case under the Colorado and Kansas statutes, and is the case under our section 2531 above.

Doubtless the state may designate one date as to which the **[6]** assessment of property belonging to one class shall relate, and a different date as to which the assessment of property belonging to a different class shall relate, but it may not discriminate against particular property belonging to any class; and if this state assumes to provide for the assessment of any property brought within its jurisdiction after the first Monday of March at 12 o'clock noon, it must also provide for the assessment of all other property of the same class so brought in.

There is nothing to be found in the decision of *Nelson Lumber Co.* v. *Loraine* (C. C.), 22 Fed. 54, which militates against the views here expressed. The Wisconsin statute under review in that case provided for the like assessment and equal taxation of all property belonging to a particular class (logs, timber and ties). The only distinction made was in the time to which the assessment related—the property of nonresidents being assessed during the month of April, and the like character of property of residents assessed as of the 1st day of May. It was held that the local conditions justified the distinction, and that the statute did not discriminate against the nonresident.

Our conclusion is that section 2531 above violates the rule of uniformity declared by our state Constitution, and that the assessment of plaintiff's property in Sanders county for the fiscal year 1919 was without authority of law and void.

The judgment is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and ASSOCIATE JUSTICES HURLY, MATTHEWS and COOPER concur.

