FORD MOTOR CO. ET AL., RESPONDENTS, *v.* LINNANE, COUNTY TREASURER, ET AL., APPELLANTS.

(No. 7,519.)

(Submitted April 24, 1936.   Decided May 9, 1936.)

[57 Pac. (2d) 803.]

*Mr. Raymond T. Nagle,* Attorney General, *Mr. Henry Mc-Clernan,* Assistant Attorney General, and *Mr. C. F. Holt,* County Attorney of Cascade County, for Appellants, submitted a brief; *Mr. Wesley W. Wertz,* Special Assistant Attorney General, argued the cause orally.

328

*Messrs. Weir, Clift, Glover & Bennett,* for Respondents, submitted a brief; *Mr. R. H. Glover* argued the cause orally.

MR. JUSTICE ANDERSON delivered the opinion of the court.

Plaintiffs sought an injunction restraining defendants county treasurer and county assessor of Cascade county from collecting a personal property tax upon a trainload of Ford automobiles. Defendants filed separate answers admitting all of the allegations of the complaint, and affirmatively alleging additional facts tending to amplify in certain particulars the allegations. Plaintiffs filed no reply. The trial court granted plaintiffs' motion for judgment on the pleadings and rendered judgment awarding plaintiffs a permanent injunction restraining the de-

fendants from enforcing the assessment and "collecting the tax, and adjudging the assessment and levy to be null and void." The appeal is from the judgment.

The plaintiff Ford Motor Company shipped from Chicago a trainload of automobiles to be delivered to the plaintiff Kincaid Motor Company at Great Falls, Montana, upon the payment of a draft attached to the bill of lading covering the shipment. The constituent parts of these machines had previously been shipped by the motor company to its Chicago assembling plant, where they were assembled into complete automobile units. The train left Minneapolis, Minnesota, over the line of the Great Northern Railway Company on the evening of Monday, March 4, 1935, entered the state of Montana during the forenoon of March 7, 1935, and arrived at Great Falls on Saturday morning, March 9, 1935. Prior to the delivery of the automobiles to plaintiff Kincaid Motor Company, a Montana corporation with its principal office and place of business at Great Falls, the county assessor proceeded to assess them for purposes of taxation. After making the assessment, he reported it to the county treasurer, who computed the tax on the automobiles and threatened to collect it by a sale of the cars. This action followed. The defendants assign error upon the granting of plaintiffs' motion for judgment on the pleadings and the rendering of judgment in favor of plaintiffs. The primary question involved is whether this personal property, brought into the state three days after the first Monday in March, is taxable for the year 1935.

In the case of *Hayes* v. *Smith*, 58 Mont. 306, 192 Pac. 615, 616, this court said: "Whatever may be said of its vast character and sweeping extent, the power of taxation, of necessity, must be limited to subjects within the jurisdiction of the state, or, as otherwise characterized, to subjects which have acquired a situs within the state for the purpose of taxation. In most jurisdictions the annual assessment of property subject to taxation is made as of some definite date, and the situs of the property determined as of that date. In pursuance of that

general policy, our legislature, by the repeated references in the revenue measure, evinced very clearly an intention that in order for personal property, other than the net proceeds of mines, to acquire a situs for the purpose of taxation it must be within the state and subject to its jurisdiction at 12 o'clock noon on the first Monday of March. The references will be found in sections 2510, 2511, 2512, 2552, 2556, 2578, 2579, and 2601, Revised Codes, and possibly elsewhere but the foregoing are sufficient for present purposes.''

Counsel for defendants assert that what the court said above ▆ with reference to the necessity of personal property having a situs within the state at noon on the first Monday of March in order for it to be subject to taxation for such year was *obiter dictum* and unnecessary to the solution of the question before the court and that the statements there made were within the rule announced by this court in the case of *Mettler* v. *Ames Realty Co.*, 61 Mont. 152, 201 Pac. 702, stating the effect of unnecessary expressions appearing in opinions.

The facts in the case of *Hayes* v. *Smith*, supra, were that the plaintiff, a resident of Oregon and the owner of certain sheep, transported them to the state of Montana in the month of June, grazed them here for three months, and then shipped them out of the state. On July 8 of the same year the assessor proceeded to assess the property, and on the basis of that assessment the county treasurer extended the tax. In that case it was sought to sustain the assessment and imposition of the tax under an Act providing in effect that all livestock brought into the state for the purpose of being grazed for any length of time whatever should be taxed for the year in which they were brought into the state. This court held that the Act was unconstitutional, in that it violated the uniformity clause of our state Constitution (Art. XII, sec. 11), for the reason that other livestock brought into the state or already within the state was taxable only if it was within the state on the first Monday of March, or for purposes of taxation had a situs within the state on that day. A careful perusal of the opinion reveals

that its very foundation was the fact that other livestock were assessed only as of the date of the first Monday in March. The argument, therefore, that the quotation from *Hayes* v. *Smith,* is *obiter dictum* cannot under any reasonable construction be sustained.

Counsel for defendants argue that under certain statutory provisions, which we shall presently notice, this property was subject to taxation. Before passing, however, to the consideration of the Code sections upon which counsel rely, we shall notice briefly some of the sections mentioned in the case of *Hayes* v. *Smith* as the foundation for the statement therein contained.

Section 2002, Revised Codes 1921, makes it the duty of the assessor, between the first Monday of March and the second Monday of July of each year, to ascertain the names of all taxable inhabitants; to secure a list of all property in his county subject to taxation, except such as is assessed by the State Board of Equalization; and to ''assess such property to the persons by whom it was owned or claimed, or in whose possession or control it was at 12 o'clock M., of the first Monday of March next preceding.'' Section 2003 directs him to require from each person a statement, under oath, setting forth specifically all the real and personal property owned by such person, or in his possession, or under his control at 12 o'clock M. on the first Monday of March. Section 2004 directs the county commissioners to furnish the assessor with blank forms setting out the statement provided for in the preceding section—a provision requiring that on these forms the assessor shall obtain a list of all the property owned, claimed, possessed, or controlled by a taxpayer at 12 o'clock M. on the first Monday of March preceding. Section 2057 commands the state land agent to transmit to the assessor of each county a list of all lands for which certificate of purchase, or deeds, or patents have issued during the year preceding the first Monday of March of each year. Section 2131 provides that the owners of railroads shall make a statement of their property as of the first Monday of March

of each year. Section 2138 contains a similar provision with reference to telegraph, telephone, power line and other like companies.

Counsel for the defendants assert that the assessment is valid under the provisions of section 2035, when properly applied; it provides: ''When any personal property liable to taxation is brought into a county at any time after the second Monday of July, and such property has not been assessed for that year, it must be listed and assessed the same as if it had been in the county at the time of the regular assessment, and the tax must be collected by the assessor, as provided in this title, at any time.'' This section does not modify the clear legislative intention as expressed in the sections cited supra. It was first enacted into the Code in 1895. Sections 2002, 2004, and 2057 are all found in the Codes of 1895 (sections 3700, 3702, 3733). Although most of these sections had been previously enacted, all were a part and parcel of the Codes of 1895; they must therefore be construed as one enactment. The purpose of section 2035 was to provide for the assessment of property which had not theretofore been assessed, but which should have been assessed as of the first Monday of March of the current year. Its purpose was the same as that of section 2034, which provides for the assessment of property which had escaped taxation for previous years. If the contention of defendants is sustained, then it will become the duty of county assessors to assess all personal property which comes into the state during the year without respect to the time of its entry into the state, the increase of domestic animals occurring, and the products of the farm and forest during the various seasons of the year. Under such a construction, harvested wheat and stacked hay would become the subject of taxation immediately upon their severance from the soil.

It is argued that the effect of the judgment of the trial court is to exempt the trainload of automobiles from taxation for the year 1935, contrary to the command of the Constitution that all property shall be subject to taxation, except such as is

specifically exempted. (Const., Art. XII, sec. 16.) This court has long been committed to the theory that all taxes are levied upon persons and not upon property; that it is the person who is taxed, and that, while strictly speaking the property which the person owns is used to determine the amount of the tax he shall pay, it is the person who after all pays the tax. The person is liable. In addition to property being a means of determining what the person shall pay, it is also security for the payment. (*State* v. *Camp Sing,* 18 Mont. 128, 44 Pac. 516, 56 Am. St. Rep. 551, 32 L. R. A. 635; *Hilger* v. *Moore,* 56 Mont. 146, 182 Pac. 477; *Hale* v. *County Treasurer,* 82 Mont. 98, 265 Pac. 6.) Under this doctrine as applied to our taxing statutes, a person or corporation is required to pay a property tax annually. The amount of that tax is determined upon the valuation of the property owned by the taxpayer as of the date of the first Monday of March at noon. Under this view no exemption here results.

It appears from the answer that the automobiles in question had not been taxed in any other state for the year 1935, and it is argued that they were escaping taxation for that year. Assuming, however, the fact as alleged to be true, it is not controlling, since it is held that one may be assessed for the same property in two different states in the same year, as is illustrated by the case of *Coe* v. *Errol,* 116 U. S. 517, 6 Sup. Ct. 475, 477, 29 L. Ed. 715. Therein the court said: "If the owner of personal property within a state resides in another state, which taxes him for that property as part of his general estate attached to his person, this action of the latter state does not in the least affect the right of the state in which the property is situated to tax it also. * * * The fact, therefore, that the owners of the logs in question were taxed for their value in Maine as a part of their general stock in trade, if such fact were proved, could have no influence in the decision of the case, and may be laid out of view." Admittedly, the power to tax by one state may depend somewhat upon the power of another to do so. (*Southern Pac. Co.* v. *Kentucky,* 222 U. S. 63, 32

Sup. Ct. 13, 56 L. Ed. 96; *Farmers' Loan & Trust Co.* v. *State of Minnesota,* 280 U. S. 204, 50 Sup. Ct. 98, 74 L. Ed. 371, 65 A. L. R. 1000.) A state may not tax personal property which has a permanent situs in another state, even though the owner of the property resides within the borders of the first-mentioned state. (*Farmers' Loan & Trust Co.* v. *State of Minnesota,* supra.)

Although on the first Monday of March, 1935, the trainload ■■ of automobiles was being transported from the city of Chicago to the state of Montana, it had not yet reached the borders of this state. Property being transported in interstate commerce is beyond the reach of state taxation, even though its owner resides within the state seeking to make a levy. The question, then, of the power of the state to tax is determined, not by the residence of the owner, but by the nature and effect of the particular state action with respect to a subject then under the sway of a paramount authority. (*Bacon* v. *Illinois,* 227 U. S. 504, 33 Sup. Ct. 299, 57 L. Ed. 615.)

The trial court did not err in granting the motion for judgment on the pleadings and entering judgment in accordance with the previous ruling.

Judgment affirmed.

ASSOCIATE JUSTICES MATTHEWS, STEWART and MORRIS concur.

MR. CHIEF JUSTICE SANDS: This is an action for an injunction against the treasurer of Cascade county to prevent the collection of a tax for the year 1935 on a trainload of automobiles shipped to the plaintiff Kincaid Motor Company from the plaintiff Ford Motor Company at Detroit, Michigan. The cars were shipped from Detroit to Chicago in a knocked-down condition, and at Chicago were assembled, and from there shipped by way of Minneapolis to the Kincaid Motor Company at Great Falls. The date of the order and the date of shipment from Detroit are not given, but the train reached Minneapolis on the 4th of March and passed through Williston, North Dakota, March 7, arriving in Great Falls on March 9, 1935. It is there-

fore apparent the property was not in Cascade county on Monday March 4 but was in transit on that date. The question at issue is whether the property can be taxed in Cascade county not having arrived in that county until after the day that all property is presumed to be assessed. There are no disputed facts.

The plaintiff Universal Credit Company, a corporation, is alleged to be a Delaware corporation, but there are otherwise no allegations concerning it, and therefore there are no allegations to warrant a judgment in its favor. The allegations as respects the plaintiff Kincaid Motor Company are that it ordered the trainload of automobiles; that delivery of the cars was not to be made until payment of a draft which accompanied the cars, and there is no allegation that this payment was ever made; therefore there are no allegations that would warrant a judgment in favor of the Kincaid Motor Company. The third plaintiff, the Ford Motor Company, is alleged to be a corporation organized under the laws of Delaware. An examination of the files in the Secretary of State's office shows that the Ford Motor Company has never filed its articles of incorporation in the state of Montana or appointed an agent in this state upon whom service of summons may be made. "No foreign corporation shall do any business in this state without having one or more known places of business, and an authorized agent or agents in the same, upon whom process may be served. And no company or corporation formed under the laws of any other country, state or territory, shall have, or be allowed to exercise, or enjoy within this state any greater rights or privileges than those possessed or enjoyed by corporations of the same or similar character created under the laws of the state." (Const., Art. XV, sec. 11.) The constitutional requirement is a definite prohibition, and a plaintiff must show by specific allegation in his complaint that this constitutional requirement has been complied with. I make this statement aware of previous rulings apparently in conflict therewith. The question is here raised, but is not the chief point in controversy, therefore not

argued at length. The Ford Motor Company has not appointed an agent or paid its filing fee in this state, and has therefore no standing in the state. I therefore fail to see how this corporation can ask for any protection in an action of this character from the courts of Montana, especially where it expressly alleges that on its property in the state it is paying no taxes and is by this very action seeking to evade such payment. It is probably claimed that the Ford Motor Company is not doing business in the state of Montana but, where, we ask, is this transaction being culminated? Where is this corporation doing business? It must be doing business somewhere, either in Delaware, Michigan, or Montana. The mere fact that the company organization is in Delaware would be no proof that it was doing business in that state. The fact that the knocked-down parts were shipped from Detroit to Chicago would not be any evidence that this business—this sale—was transacted in Michigan. Montana must therefore be the situs of the transaction. If, for illustration, we had laws in this state, as there are in many states, taxing all business transactions, this state would be the proper place for the payment of the transaction tax. We should therefore refuse to recognize the Ford Motor Company as the plaintiff or as a party having any rights before the courts of Montana in this character of an action, and the injunction should therefore be denied.

A further much-mooted question demands our chief consideration. The property was in transit on Monday the 4th day of March, and counsel for the plaintiff claim exemption because the property was not here in Montana until after that day. It is a well-established principle of law that property in transit may not be assessed at its location on the particular day and hour when the tax goes into effect. I quote from a leading California case: "Upon this language it is argued that the actual location of property upon noon of the 1st Monday of March of each year absolutely fixes its situs for purposes of taxation. With this contention, however, we cannot agree. It is always recognized that in the assessment of *goods in transit*,

of migrating herds, and the rolling stock and vessels of transportation companies, the permanent situs, as distinguished from the place of temporary sojourn, is of controlling force." (*Rosasco* v. *County of Tuolumne,* 143 Cal. 430, 433, 77 Pac. 148, and cases there cited.) This principle of taxation is approved beyond question by all courts. The permanent situs of property is its proper place for taxation. Property in transit could not be practically taxed at any place along the way. For instance, it might be in two or three different states on the day that the assessment is presumed to be made; it probably would be exceedingly difficult to tell at exactly what place it was at the hour of noon on March 4. Therefore Cascade county was the permanent situs of this transitory property and the only proper place for its taxation. This presumption of situs does no violence to any law, but instead prevents the perpetration of a fraud upon the state.

This is an action in equity. One of the fundamental rules of equity courts is that "he who seeks equity must do equity." The plaintiffs very frankly admit that this property is not being taxed elsewhere. They seek to entirely evade all taxation of this property by holding it out of the state until after the first Monday in March. It is most certainly the duty of the owner of any property to pay his fair share of the taxes of a state and municipality where that property is located. Any person or company that openly violates that duty has no place in a court of equity, and the remedy here sought by the plaintiffs to enjoin the collection of this tax is not entitled to consideration by this court under the familiar rule that "he who seeks equity must do equity" or the further rule of law, section 8746, Revised Codes 1921, that "no one can take advantage of his own wrong." By authorizing an injunction in this case, this court in effect approves an attempted fraud.

I deem the correct rule in this class of cases to be that *all property in the state on the first Monday of March and all property in transit to Montana on that day is subject to taxation in Montana if not elsewhere previously more justly as-*

340

*sessed.* This is in accordance with the Constitution which contemplates the taxation of all property somewhere. This rule works no hardship upon any property owner, and is the only rule which will prevent the evasion of taxation of transitory property. The majority opinion in this case suggests that, "if the contention of defendants is sustained, then it will become the duty of county assessors to assess all personal property which comes into the state during the year without respect to the time of its entry into the state; the increase of domestic animals occurring, and the products of the farm and forest during the various seasons of the year. Under such a construction, harvested wheat and stacked hay would become the subject of taxation immediately upon their severance from the soil." The error of this statement is apparent. The property therein mentioned was not in existence on the first Monday of March, and therefore was not taxable for that year. Referring to the statement that the increase of domestic animals could be taxed, I suggest that bred ewes would have a greater value, and therefore the unborn lambs within the animals might be considered a subject of increased taxation because of the greater value of the mother animals. Lambs unborn on the first Monday of March would not be taxable as such but only with the tax on their mothers.

If this injunction is granted, it will entirely relieve the owners of this property on the 4th day of March, 1935, from the payment of any taxes whatsoever for that year, a loss to Cascade county of over $3,000. The mere statement is abhorrent to honest people, and I cannot assent to the practice. This method of tax evasion is costing the honest taxpayers of the state (perhaps some would be dishonest if they knew the way) thousands of dollars each year.

I believe the legislature should enact a law permitting the assessment of property not shown to be elsewhere taxed, regardless of the date of its entry into the state.

Rehearing denied May 21, 1936.