WHEIR ET AL., PLAINTIFFS, *v.* DYE ET AL., DEFENDANTS.

(No. 7,748.)

(Submitted October 21, 1937. Decided November 2, 1937.)

[73 Pac. (2d) 209.]

*Mr. Phil. G. Greenan* and *Mr. Randall Swanberg,* for Plaintiffs, submitted an original and a reply brief; *Mr. Swanberg* argued the cause orally.

*Mr. W. E. Keeley* and *Mr. Sid. Stewart,* appearing in behalf of Plaintiffs, filed a supplemental brief; *Mr. Stewart* argued the cause orally.

*Mr. Harrison J. Freebourn,* Attorney General, and *Mr. John A. Matthews,* Special Assistant Attorney General and Council for Defendant State Board of Equalization, submitted a brief; *Mr. Matthews* argued the cause orally.

*Messrs. Toomey, McFarland & Chapman,* by leave of court appearing for the Montana Motor Trades Association and contending for the constitutionality of Chapter 72, Laws of 1937, submitted a brief; *Mr. E. G. Toomey* argued the cause orally.

MR. JUSTICE ANDERSON delivered the opinion of the court.

This is an original proceeding in this court by the members of the board of county commissioners of Cascade county, the county assessor, and the county treasurer, in their respective official capacities and as individuals, against the members of the State Board of Equalization, as a board, to prohibit or restrain them in their official capacities from putting into effect the provisions

of Chapter 72 of the Laws of 1937, relating, in general, to the registration, licensing, and taxation of motor vehicles.

It is asserted in plaintiffs' complaint that portions of the Act are unconstitutional upon various grounds, which we will presently notice. The defendants have appeared by motion to quash. On the argument and in the briefs they concede the parties are proper, and that they have such an interest in the subject-matter as to entitle them to bring this proceeding.

The attack here made on the constitutionality of the Act is directed against sections 1 and 9 thereof. A large part of the chapter is merely a re-enactment of existing laws, and as to these no objection is made.

The two sections above provide that all motor vehicles are assessable for the general property tax at noon on the first Monday of January, instead of at noon on the first Monday of March of each year, as heretofore provided, and at which time all other personal property is assessable. Before the owners of motor vehicles are permitted to register them or receive license plates, they must pay the property tax for that year. The tax is computed and determined upon the basis of the levy for the preceding year. Motor vehicles in the hands of dealers are assessable at the same time, as well as cars in dead storage. All except dealers must pay the property tax before operating their motor vehicles upon the highways or receiving their licenses to do so. No motor vehicles are to be taxed twice in the same year. These requirements apply to all alike, regardless of whether the taxes are a lien on real estate or not.

The result of this enactment, when considered with reference to our other taxing laws, may be stated as follows: All persons who operate motor vehicles on highways will pay the property tax on such vehicles when they secure their licenses, at the rate of taxation for the previous year. Taxes on all other personal property, including dealers' vehicles and those in dead storage, will pay at the rate for the current year. As to dealers' and cars in dead storage, if secured by a sufficient lien on real estate, one-half the property tax will be paid in the month of November and the residue the following May. (Sec. 2169.2, Rev. Codes.)

If they are not sufficiently secured, the assessment may be certified by the assessor and collected by the treasurer after notice, at the rate for the preceding year, with adjustments later to be made, so that the taxes conform to the current year. (Chapter 200, Rev. Codes, secs. 2238 et seq.)

It is earnestly contended by plaintiffs that the portions of the Act which we have summarized are unconstitutional as being violative of section 11, Article XII of the Constitution, which declares that taxes shall be uniform upon the same class of subjects within the territorial limits of the taxing power, and that these provisions violate the due process clause of the Constitution, section 27, Article III.

Much is said in the arguments and briefs of counsel on behalf of the plaintiffs, assailing the Act upon the ground that thereby the expense of taxing motor vehicles is greatly increased, and that undue burdens are thereby laid upon the taxing authorities and the taxpayers as a result of this legislation; but all of these questions are of no concern to the courts. In *Mills* v. *State Board of Equalization,* 97 Mont. 13, 33 Pac. (2d) 563, 568, we said: "The judicial tribunals of the state have no concern with the policy of legislation. That is a matter resting altogether within the discretion of another co-ordinate branch of the government. The judicial power cannot legitimately question the policy, or refuse to sanction the provisions, of any law, not inconsistent with the fundamental law of the state." (See, also, *State ex rel. Nagle* v. *Kelsey,* 102 Mont. 8, 55 Pac. (2d) 685; *State ex rel. State Board of Education* v. *Nagle,* 100 Mont. 86, 45 Pac. (2d) 1041.)

In *Rider* v. *Cooney,* 94 Mont. 295, 23 Pac. (2d) 261, 264, we said: "The legislature is presumed to act, so far as mere questions of policy are concerned, with full knowledge of the facts upon which its legislation is based, and its conclusions on matters of policy are beyond judicial consideration. (*Chicago, M. & St. P. R. Co.* v. *Tompkins,* 176 U. S. 167, 20 Sup. Ct. 336, 44 L. Ed. 417.)"

In *State ex rel. Tipton* v. *Erickson,* 93 Mont. 466, 19 Pac. (2d) 227, 228, we said: "In the determination of the ques-

tion of the constitutionality of any Act, a statute, if possible, will be construed so as to render it valid. (*Hale* v. *County Treasurer*, 82 Mont. [98] 105, 265 Pac. 6.) It is presumed to be constitutional, and all doubts will be resolved in favor of its validity if it is possible so to do. (*State ex rel. Toomey* v. *Board of Examiners*, 74 Mont. 1, 238 Pac. 316, 320.) The invalidity of a statute must be shown beyond a reasonable doubt before the court will declare it to be unconstitutional. (*Herrin* v. *Erickson*, 90 Mont. 259, 2 Pac. (2d) 296.) And a statute will not be held unconstitutional unless its violation of the fundamental law is clear and palpable. (*Hill* v. *Rae*, 52 Mont. 378, 158 Pac. 826, L. R. A. 1917A, 495, Ann. Cas. 1917E, 210.)''

This court has upheld the right of the legislature to classify ▮ property for the purposes of taxation in the very able opinion in the case of *Hilger* v. *Moore*, 56 Mont. 146, 182 Pac. 477. That case has been followed and approved by this court unto the present day.

We laid down the fundamental rules underlying the classification of property in the case of *Bank of Miles City* v. *Custer County*, 93 Mont. 291, 19 Pac. (2d) 885, 887, wherein we said:

"The use to which the property is devoted and its productivity constitute the measuring stick in determining its proper classification. (*Chicago, Milwaukee & St. Paul Ry. Co.* v. *Powell County*, 76 Mont. 596, 247 Pac. 1096; *Hilger* v. *Moore*, supra; 1 Cooley on Taxation (4th ed.), sec. 335, p. 717; *McHenry* v. *Alford*, 168 U. S. 651, 666, 18 Sup. Ct. 242, 42 L. Ed. 614; *State* v. *Leonardson*, 51 Idaho, 646, 9 Pac. (2d) 1028.)

"The basis for classification of the thing classified need not be deducible from its nature. (*Watson* v. *State Comptroller of New York*, 254 U. S. 122, 125, 41 Sup. Ct. 43, 65 L. Ed. 170; *Stebbins* v. *Riley*, 268 U. S. 137, 144, 45 Sup. Ct. 424, 69 L. Ed. 884, 44 A. L. R. 1454.)

"Discrimination merely is not inhibited, for it is recognized that there are discriminations which the best interests of society require. (*Heisler* v. *Thomas Colliery Co.*, 260 U. S. 245, 255, 43 Sup. Ct. 83, 67 L. Ed. 237.)

"A classification is not open to objection unless it precludes the assumption that the classification was made in the exercise of legislative judgment and discretion. (*Stebbins* v. *Riley,* supra.)

"Any classification is permissible which has a reasonable relation to some permitted end of government action. (*Heisler* v. *Thomas Colliery Co.,* supra; *Watson* v. *State Comptroller of New York,* supra.)

"When there is a difference between various properties, it need not be great or conspicuous in order to warrant classification. (*Citizens' Telephone Co.* v. *Fuller,* 229 U. S. 322, 331, 33 Sup. Ct. 833, 57 L. Ed. 1206; *Keene* v. [*Comptroller of State of*] *New York,* 222 U. S. 525, 536, 32 Sup. Ct. 105, 56 L. Ed. 299, 38 L. R. A. (n. s.) 1139.)

"For the purposes of classification of property, there is a difference in the doing of business and its results. (*Citizens' Telephone Co.* v. *Fuller,* supra.)

"It makes no difference that the facts on which the classification is based may be disputed or their effect opposed by argument and opinions of serious strength. It is not within the province of the courts to arbitrate any such contrariety. (*Rast* v. *Van Deman & Lewis Co.,* 240 U. S. 342, 357, 36 Sup. Ct. 370, 60 L. Ed. 679, L. R. A. 1917A, 421, Ann. Cas. 1917B, 455; *Heisler* v. *Thomas Colliery Co.,* supra.)"

It is contended that the legislature has classified property for purposes of taxation by section 1999, Revised Codes, placing motor vehicles in the hands of individuals and corporations in class 2 along with many other articles of personal property, and without express amendment has singled out motor vehicles for special consideration. Also, it is urged that motor vehicles in the hands of dealers are assessed at a rate different from those in the hands of individuals and corporations. By both contentions it is urged that unlawful discriminations result.

Under classification Acts we have held that two identical articles of personal property in the hands of different owners, when applied to different uses and consequent productivity, may be placed in different classes, and, therefore, subject to a different

burden of taxation. (*Northern Pac. Ry. Co.* v. *Sanders County,* 66 Mont. 608, 214 Pac. 596; *Butte Elec. Co.* v. *Brett,* 80 Mont. 12, 257 Pac. 478; *Chicago, Mil., St. P. & P. Ry. Co.* v. *Custer County,* 96 Mont. 566, 32 Pac. (2d) 8; *Bank of Miles City* v. *Custer County,* supra.)

The ease with which motor vehicles may be removed from the taxing district, and in fact from the state, as compared with most other personal property, is a sufficient reason, under the foregoing authorities, for special treatment at the hands of the legislature. The difference in the case of the dealer in motor vehicles and that involving individuals likewise justified the difference in the rate, for the dealer buys a motor vehicle, sells it, and purchases another, which he in turn sells; thus the capital invested in the car in the hands of the dealer yields several distinct profits during the course of a year, whereas in the hands of an individual little or no profit may be realized from the investment in the motor vehicle.

It is argued that discrimination results from the fact that a new motor vehicle, bought on December 31, is assessable the next day, whereas one purchased on the 2d day of January following is not taxable until the following year. We have previously held that such a situation does not result in exempting property from taxation. In the case of *Ford Motor Co.* v. *Linnane,* 102 Mont. 325, 57 Pac. (2d) 803, 806, we said: "This court has long been committed to the theory that all taxes are levied upon persons and not upon property; that it is the person who is taxed, and that, while strictly speaking the property which the person owns is used to determine the amount of the tax he shall pay, it is the person who after all pays the tax. The person is liable. In addition to property being a means of determining what the person shall pay, it is also security for the payment. (*State* v. *Camp Sing,* 18 Mont. 128, 44 Pac. 516, 56 Am. St. Rep. 551, 32 L. R. A. 635; *Hilger* v. *Moore,* 56 Mont. 146, 182 Pac. 477; *Hale* v. *County Treasurer,* 82 Mont. 98, 265 Pac. 6.) Under this doctrine as applied to our taxing statutes, a person or corporation is required to pay a property tax annually. The amount of that tax is determined upon the valuation

of the property owned by the taxpayer as of the date of the first Monday of March at noon. Under this view no exemption here results.'' If no exemption results, no unlawful discrimination follows.

It is said that if the owner of a motor vehicle trades in his vehicle on December 31 and obtains a new one in exchange on January 2, and follows this practice each year, he never will pay taxes on a motor vehicle. But the dealer, or the one to whom he sells the old car, would of necessity have to pay the taxes and no discrimination results, for the property does not escape taxation. In such instances, only the burden of paying the tax is shifted.

It is argued that taxes on motor vehicles are assessable as of January 1, whereas other personal property is assessed for purposes of taxation as of noon the first Monday of March. This court, in condemning a statute fixing a different date for assessment of certain livestock from that of certain other livestock, said in *Hayes* v. *Smith*, 58 Mont. 306, 192 Pac. 615, 617: ''Doubtless the state may designate one date as to which the assessment of property belonging to one class shall relate, and a different date as to which the assessment of property belonging to a different class shall relate, but it may not discriminate against particular property belonging to any class; and if this state assumes to provide for the assessment of any property brought within its jurisdiction after the first Monday of March at 12 o'clock noon, it must also provide for the assessment of all other property of the same class so brought in.'' Here, all motor vehicles are assessed at the same time and no discrimination results.

It is contended that discrimination arises from the fact that a different method is used for enforcing payment of taxes on motor vehicles from that used in cases of other classes of personal property, in that the motor vehicle may not be used on the highways until the tax is paid and license cannot be secured for such operation until the tax is paid, and if the vehicle is operated without a license the operator has com-

mitted a misdemeanor. It is generally held that the collection of taxes in an unusual way on account of the kind of property does not violate the uniformity provision of the Constitution. It is the levy or assessment of the tax which must be uniform, and not its means of enforcement. (*Tappan* v. *Merchants' Nat. Bank,* 19 Wall. 490, 505, 22 L. Ed. 189; *Rode* v. *Siebe,* 119 Cal. 518, 51 Pac. 869, 39 L. R. A. 342; *In re Proceedings to Enforce Payment of Delinquent Taxes,* 197 Minn. 266, 266 N. W. 867, 869; *Mississippi Tax Com.* v. *Flora Drug Co.,* 167 Miss. 1, 148 So. 373.) In the case of *Tappan* v. *Merchants' Nat. Bank,* supra, the Supreme Court of the United States said: "Again, it is said the law in question destroys the uniformity of taxation, because it provides for the collection of the taxes assessed on account of this kind of property in an unusual way. The Constitution does not require uniformity in the manner of collection. Uniformity in the assessment is all it demands. When assessed, the tax may be collected in the manner the law shall provide; and this may be varied to suit the necessities of each case." And in the Minnesota case, supra (*In re Proceedings to Enforce Payment of Delinquent Taxes*), it is said: "As long as the rate of assessment is the same on properties similarly situated and used for like purposes, and the obligation to pay the tax remains, there can be no objection to the remedies devised to enforce the tax on the ground that such remedies violate the uniformity clause of our Constitution. Primarily, that clause is aimed at the equal assessment and levying of the tax."

It is contended that because the Act provides, "The amount ▮ of taxes on said motor vehicle shall be computed and determined by the county treasurer on the basis of the levy of the year preceding the current year of application for registration or re-registration and such determination shall be entered on the application form in a space provided therefor," discrimination results, since taxes for the year 1938 on all personal property except motor vehicles shall be paid at the rates levied for that year, and that such vehicles in the hands of dealers will pay taxes at the 1938 rate; whereas other owners of motor vehicles will pay at the 1937 rates, which will be either more or less than

those for 1938. The same contention is made as to the succeeding years. We concede that if the effect of the law, as construed by the plaintiffs, is true, some difference in the rates of taxation for the two years will result, and a serious question of discrimination will arise. But when we construe this Act with the existing laws relative to the taxation of personal property, no such result in fact obtains. It will be noted the legislature in the quoted provision did not say that taxes would be "levied or assessed," but did say they are to be "computed and determined * * * on the basis of the levy of the year preceding." (Sec. 1.)

Section 2238 of our Codes provides, "Upon discovery of personal property * * * the taxes upon which are not in his [county assessor's] opinion a lien upon real property sufficient to secure the payment of such taxes," it is the duty of the county assessor immediately to certify the assessment list of this property to the county treasurer. He, in turn, must "for the purpose of determining the taxes due on such personal property * * * use the levy made during the previous year if the levy for the current year has not yet been made," and proceed upon notice to the collection of the tax in the manner provided in Chapter 200.

Section 2247 provides for the adjustment of taxes collected on this class of property, as follows: "All rates of tax levy set by the board of county commissioners on the second Monday in August of each year, shall apply permanently to this class of personal property during the ensuing year, and the treasurer shall, upon collection of any such taxes, immediately distribute the money so collected to the various and proper funds in his charge. * * * Provided further, that if the rate of taxation fixed for the year in which the collection is made is an increase over the preceding year's levy, then the said board of county commissioners may direct the county treasurer to collect the amount of such increased levy, but shall not be obliged to do so in cases where, in the opinion of the board, the cost of collection would exceed the amount of such increase, and provided fur-

ther that if the rate fixed for the year in which the collection is made shall be less than the levy for the preceding year, then the person from whom such excess tax was collected may file with the board of county commissioners a duly verified claim for a refund of such excess tax, at any time before the first day of November of the year in which such an excess was collected, and such claim shall be allowed and ordered paid by the board of county commissioners to the amount of such excess.''

Section 2247 relates, among other things, to the permanent rate of taxation of property which is assessed and taxes paid on at a rate other than the current year; and further provides for the making of adjustments so that the tax finally paid shall conform to the rate for the current year. Chapter 72 is silent on these subjects. Section 2247 is a general statute applicable to all personal property on which the tax has been paid at the rate for the previous year. Chapter 72 contains a general repealing clause, repealing all Acts in conflict therewith, but does not expressly repeal or qualify the provisions of section 2247. We think section 2247 applies to property of this character unless it is repealed by the provisions of Chapter 72. Any repeal which may result must of necessity be by implication. Repeals by implication are not favored by the courts. In the case of *Box* v. *Duncan,* 98 Mont. 216, 38 Pac. (2d) 986, 987, we said: ''To make tenable the claim that an earlier statute was repealed by a later one, the two Acts must be plainly and irreconcilably repugnant to, or in conflict with, each other; must relate to the same subject; and must have the same object in view. (*State ex rel. Metcalf* v. *Wileman,* supra [49 Mont. 436, 143 Pac. 565]; *Jobb* v. *Meagher County,* 20 Mont. 424, 51 Pac. 1034; *State ex rel. Esgar* v. *District Court,* 56 Mont. 464, 185 Pac. 157; *Equitable Life Assur. Co.* v. *Hart,* 55 Mont. 76, 173 Pac. 1062.)'' Hence, the two Acts are not repugnant nor in conflict with one another. Both may stand without one impinging on the other. Therefore, there can be no implied repeal here. The provisions of section 2247 must apply to motor vehicles on which taxes have been paid at the old rate, and hence they are subject to revision

and adjustment to conform to the same rate on all property of the same class, thereby establishing complete uniformity in so far as the contentions of counsel are concerned.

It is suggested that where a dealer in motor vehicles has in stock certain of such vehicles on January 1, and they are assessed in accordance with the provisions of Chapter 72 as a part of his stock in trade, and he, prior to paying the taxes on them, sells one of them to a purchaser who applies for registration, the assessor will on the application make another assessment on the property, and the property will be subject to double assessment and taxation. When the motor vehicle is assessed in the hands of the dealer who pays on $33\frac{1}{3}$ per cent. of the true value, as we have seen, the tax is owing by him on that basis, and before that motor vehicle can be registered or re-registered that tax must be paid. However, no double taxation will result, for it is the duty of the county treasurer, where there is a double assessment for the same year, to collect only the tax justly due and make return of the facts under affidavit to the county clerk. (Sec. 2223, Rev. Codes.)

It is said that the individual who purchases the motor vehicle from the dealer must pay the tax on the basis of $33\frac{1}{3}$ per cent. of the true value, while other individuals and corporations will pay on the basis of 20 per cent. of the true value. But if the individual purchases a motor vehicle on which the taxes have not been paid, he is not, when he pays the tax, paying his own tax, but he is paying the tax of the dealer. The purchaser pays this tax voluntarily, for he is not compelled to buy the vehicle.

We have hereinabove justified this classification of motor vehicles in the hands of a dealer in one class, and in the hands of individuals in another, and therefore no discrimination results, since the taxes which the purchaser pays are not his own, but those of another. Presumably, the unpaid taxes were taken into consideration in fixing the purchase price of the vehicle. In fact, the county assessor does not make a new assessment when registration is applied for, as he merely notes on the appli-

cation the amount of the assessment previously made against the dealer.

Counsel for plaintiffs have not argued their contention with ■ reference to the violation of the due process of law clause of the Constitution. It is untenable. (*Kitagawa* v. *Shipman,* (C. C. A.) 54 Fed. (2d) 313; see, also, *Hilger* v. *Moore,* supra.) The other contentions have been considered by the court, and are found to be without merit.

The motion to quash is sustained, and the proceeding ordered dismissed.

ASSOCIATE JUSTICES STEWART, MORRIS and ANGSTMAN concur.

MR. CHIEF JUSTICE SANDS dissents.